## AIKMAN v. SANBORN et al.

### L. A. No. 370; March 30, 1898.

#### 52 Pac. 729.

**Vendor and Vendee—Rescission.**—The Fact That a Vendor of land fails to perform his contract, or puts it out of his power to perform it, does not amount to a rescission, but is only ground for rescission by the purchaser.

**Vendor and Vendee—Rescission.**—Even if a Vendor of land by his own act has put it out of his power to comply with the contract, or has been guilty of such a breach of it that he could not enforce it, the purchaser cannot rescind, if he was first in default.[1]

---

[1] Cited with approval in Frank v. Bauer, 19 Colo. App. 452, 75 Pac. 932, a suit for royalties, in connection with mining properties.

Cited and approved in Jennings v. Dexter, Horton & Co., 43 Wash. 306, 86 Pac. 578, where the court says: "A party so in default will not be allowed to rescind a contract."

**Vendor and Vendee.—In an Action for Money Paid by Plaintiff** on a contract for the purchase of land, a recovery can be had only against the person to whom it was paid, and not against a third person, who took a conveyance of the land, and assumed his grantor's contract with plaintiff, as such action is based, not on the contract of purchase, but on the proposition that the contract has been rescinded, and that the vendor has money paid to him without consideration.

**Vendor and Vendee.—The Vendor Does not Rescind the Contract** by Insisting that the purchaser, by failing to make payment as he agreed to in his covenant, forfeited all payments made and his rights under the contract.[1]

**Liquidated Damages for Breach of Contract to Convey.—Under** Civil Code, sections 3387, 3389, which provide that a contract otherwise proper may be specifically enforced, though a penalty is imposed, or the damages are liquidated for its breach, as it is presumed that the breach of an agreement to transfer real property cannot be adequately relieved by pecuniary compensation, the parties may agree to stipulated damages in contracts for the purchase of land.[2]

APPEAL from Superior Court, Los Angeles County.

Action by William Aikman, administrator, against John P. Sanborn and another. From a judgment for plaintiff and an order denying a new trial defendants appeal. Reversed.

Works & Lee for appellants; C. L. Batcheller for respondent.

PER CURIAM.—This is an action to recover $866.66 paid by plaintiff's intestate to John P. Sanborn upon a contract for the purchase of land in the county of Los Angeles. After the contract had been made, Sanborn conveyed the land to Murphy, who expressly assumed all the obligations of Sanborn's contracts. Sanborn was not served with process, and Murphy is practically the only defendant. The contract was made February 7, 1888. The purchase price was $2,600, payable in three equal installments—one, at date of contract; the second, February 7, 1889; and the third, February 7, 1890. The contract contained this stipulation: "That time shall be considered the essence of the contract, and if default shall be

---

[1] Cited and approved in the somewhat similar case of Foxley v. Rich, 35 Wash. 178, 99 Pac. 672.

[2] Cited in the note in 108 Am. St. Rep. 61, on agreements purporting to liquidate damages.

made in the payment of any installment of principal or interest, or in payment of taxes, when the same shall become due, then the whole of said principal and interest shall be due and payable, or this agreement may be rescinded, at the option of John P. Sanborn, his heirs, representatives, or assigns, and said John P. Sanborn, his heirs, representatives or assigns, shall have the right to re-enter upon said premises, and each and every part thereof, and all payments which shall have been made under this agreement by the purchaser shall be forfeited, and be retained as liquidated damages.'' The property sold was described as lots 1, 2, 9 and 10, block 41, ''according to the East Whittier townsite acreage property,'' a map of which Sanborn agreed to put on record. John Aikman, plaintiff's intestate, died August 10, 1889. He made no payments except the first, which was at the date of the agreement. He had then been in default since February 7, 1889. October 5, 1889, Sanborn conveyed the entire tract, of which the land sold to Aikman constituted a part, to Murphy, upon the condition heretofore stated. Neither plaintiff nor his intestate ever paid or offered to pay the balance of the purchase money due after the first payment. Neither Sanborn nor his assignee have ever refused to perform the' agreement made, nor are they in any default in respect to the said agreement. The purchaser did not take possession of the land. The suit was commenced November 1, 1894, without any offer to pay or any demand for a deed. Indeed, even at the trial the present owner of the land offered to convey to plaintiff upon payment as specified in the contract.

It is contended that Murphy rescinded the contract by failing to file the map according to which plaintiff's intestate purchased, and by causing the townsite to be resurveyed so as to make some changes in the street. But if Murphy failed to perform his contract, or put it out of his power to perform, this did not of itself make a rescission. It only authorized Aikman to rescind, provided he was not himself in default. I know there are cases in which such conduct on the part of a vendor has been called ''rescission,'' but it is obvious that such remarks are merely careless expressions; for in such cases the party not at fault may usually either deem the contract rescinded, and recover sums paid on it in an action for money had and received, or he may sue on the contract to recover damages for the breach. But, conceding

that the vendor had by his own act put it out of his power to comply with his contract, or had been guilty of such a breach of it that he could not enforce it, the purchaser could not rescind, for he was first in default. But in no event could he recover from Murphy money paid to Sanborn. The action is not based upon the contract, but upon the proposition that the contract has been rescinded, and, being non-existent, the vendor has money which was paid to him without consideration; therefore, having money in his hands which belongs to the plaintiff, such action will lie. Had the purchaser not been in default, he, upon a tender to Sanborn, could, if Sanborn did not or could not comply with his agreement, have elected to rescind, and thereupon could have maintained such a suit against Sanborn, or he might have sued Sanborn for damages. A class of cases is cited here which, it is contended, hold that when, under a contract like this, the vendor insists upon the very terms of his contract— that is, claims that the vendee, by failing to pay, has, according to his covenant, forfeited all payments made, and his rights under the contract—he thus rescinds. It cannot be that, when one insists upon his stipulated rights under a contract, he indicates an intention not to be bound by it, and these cases must not be so understood: Merrill v. Merrill, 103 Cal. 287, 35 Pac. 768, and 37 Pac. 392. As we read the code, it expressly recognizes the right to agree to stipulated damages in agreements for the purchase of land (Civ. Code, secs. 3387, 3389); but even under the doctrine of Drew v. Pedlar, 87 Cal. 443, 22 Am. St. Rep. 257, 25 Pac. 749, the vendor has not consented to a rescission in this case. He has never declined to perform his contract. The judgment and order appealed from are reversed.