## McLEAN v. WEDELL.

No. 1732.    Decided January 5, 1907 (88 Pac. 414).

VENDOR AND PURCHASER—RESCISSION—RECOVERY OF PAYMENT.    Plaintiff contracted to purchase land of defendant and made a payment. The contract was mutually rescinded and another entered into by which defendant agreed to transfer city lots to plaintiff and credit the payment on the price.    This contract was also mutually rescinded and negotiations begun for the purchase of a house and lot, and defendant executed to plaintiff a bond for deed of the property in which plaintiff was given credit for the payment.    Plaintiff never returned the bond.    *Held*, that plaintiff could not recover the payment.

APPEAL from District Court, Second District; J. A. Howell, Judge.

Action by John McLean against W. B. Wedell.    Judgment for plaintiff, and defendant appeals.

REVERSED.

*H. H. Henderson* and *H. R. Macmillan* for appellant.

*W. L. Maginnis* for respondent.

McCARTY, C. J.

Plaintiff brought this action to recover from defendant the sum of $750, and interest, alleged to be due upon a rescission of a contract to buy land, plaintiff having paid said sum as part of the purchase price.    Plaintiff alleges that the contract was rescinded by mutual agreement, "and thereupon

there became due the said plaintiff, by reason of the premises, the sum of $750." Defendant answered and admitted the payment by plaintiff of said sum on the purchase price of the land, but alleged "that, after such payment, and at the request of the plaintiff, said contract was canceled, rescinded, and declared null and void, and both parties were relieved, by mutual agreement, from the performance of the same." Defendant further alleged "that all sums due either party thereunder have been fully paid, discharged, liquidated, and settled in full, and there is now nothing due from defendant to plaintiff." A trial by jury was had and a verdict for the full amount sued for rendered in favor of plaintiff. From the judgment entered on the verdict, defendant appeals.

The contract referred to in the pleadings reads as follows: "Ogden, Utah, April 20, 1903. Received of John McLean $750.00, part payment house and lot and 500 shares stock Maple Grove Orchard & Vineyard Co. Balance of $1,250.00 to be paid annually from Nov. 1st, 1904. Papers to be placed in escrow with Utah Nat'l Bank, Ogden, until paid for. W. B. Wedell." The evidence introduced by plaintiff in support of the allegations of his complaint, is about as follows: After the payment of the $750 by plaintiff, as part of the purchase price of the real estate mentioned in his complaint, he became dissatisfied with the bargain, and at his request Wedell, defendant herein, agreed to release him from the contract and give him ten lots in Ogden for the $750 paid on the contract, and, in the course of his testimony, he says he "signed the agreement to take the lots." He further testified: "Q. You agreed to take the lots in place of the money—$750? A. Yes, sir." As a part of this transaction the parties signed and executed the following instrument, or memorandum, in writing: "Deed in escrow for ten lots to be delivered in bank on delivery of this receipt. July 16, 1904. W. B. Wedell, John McLean." The plaintiff also signed and delivered to defendant a receipt which reads as follows: "Ogden, Utah, July 16th, '04. Received of W. B. Wedell, $125.00 in full payment

for all my right, title and interest in the crop, and all my equity of whatsoever nature, tools, stock, etc., more fully described in a bill of sale dated July 16, 1904, and all my right, title and interest in a contract between W. B. Wedell of the Maple Grove Orchard & Vineyard Co. and John Mc-Lean dated April 20, 1903." The contract referred to in the foregoing instrument is the same contract mentioned in the pleadings, and on which McLean paid the $750 in question. Mrs. Jane McLean, plaintiff's wife, tes_fied, in part, as follows: "After we agreed to take these lots we came to the conclusion we would rather have a house to live in, Mr. McLean having obtained a position in town, if we could get a reasonable one, and for that purpose Mr. McLean went to Wedell and told him he would rather have a house and lot. We talked it over, and thought it would save rent." On this point McLean, plaintiff, testified: "I afterwards told him [referring to Wedell] I wanted a house to live in. He showed me several houses, and he brought my wife to the house on Washington and Fourth street near Ogden City, and also brought me down and showed it to me." Wedell executed and delivered to McLean a bond for a deed to this house and lot on which it stood. McLean admits that he accepted and retained the bond for a deed, but denies that he agreed to purchase the house and lot for which the bond was given. He took the bond to his attorney for the purpose of having it examined and afterwards went to Wedell and made objections to certain provisions of the bond. One objection urged was that the price was too high. Wedell then made and delivered to McLean another bond in which the price of the house and lot was fixed $200 less than it was in the first bond, and the other provisions to which objections were made were entirely omitted from the second bond. McLean also accepted and retained the second bond, and, when asked, on cross-examination why he did not return to Wedell the first bond, he answered: "I thought I would keep the two till I got my money. It was the only things I had to hold my money." And he further testified, on cross-examination: "This paper handed to me is one of the bonds for

deed that Mr. Wedell delivered to me in his office, and which I took away and showed my attorney. Mr. Wedell afterwards asked for it back, and I refused to give it to him. . . . I took the bond to the attorney to see what it was like. He turned over the bond and I took it away and gave it to my attorney. I got the second one also. They are now both together; both in the possession of Mr. Maginnis, my attorney." Again he says: "After I got these deeds, I had my wife read them and I found this objection [referring to the objections hereinbefore mentioned], and came back to him, and he agreed to fix it. He went and got up another deed. . . . I brought it to Judge Maginnis." On this point Mrs. McLean testified: "We didn't return them. I thought I had a cinch on him and kept them." The provisions of the second bond in relation to the purchase price and the time of payment are, except as to the amount, the same as the first bond, and read as follows: "Twenty-five hundred and ninety dollars ($2,590.00) to be paid as follows $750.00 cash at date of the agreement, receipt of which is hereby acknowledged, and $20.00 per month thereafter until the balance of the $1,890.00 has been paid." Charles Stout, a witness for McLean, testified, in part, as follows: "I am practicing law with Mr. Maginnis. I had a conversation with Mr. Wedell with reference to this $750 before this action was brought, at the instance of Mr. Maginnis, who was at that time attorney for Mr. McLean. I asked Wedell if he would pay the $750. . . . He said he would do as he agreed, or give a house as he agreed, but would not pay the $750."

When the evidence was all in and both parties had rested, defendant requested the court to give to the jury the following peremptory instruction: "The court instructs the jury, as a matter of law, that the plaintiff cannot recover in this action, and you will, therefore, render a verdict in favor of the defendant and against the plaintiff, no cause of action." The refusal of the court to give this instruction is now assigned as error.

We are of the opinion that, as the record now stands, plain-

tiff, as a matter of law, is not entitled to recover, and that the court should have directed a verdict for defendant. The action is for money paid on a contract for the purchase of certain real estate in Box Elder county, which contract, it is alleged in both complaint and answer, was, by the parties, mutually rescinded. The undisputed evidence, however, shows that another contract was entered into by and between the parties whereby the defendant agreed to sell to plaintiff, and plaintiff agreed to purchase from defendant, ten lots in Ogden city, and the $750 paid by plaintiff on the first contract was applied as part payment on the purchase price of the ten lots. Plaintiff became dissatisfied with the contract for the purchase of the ten lots, and it was, at his suggestion, likewise mutually rescinded and canceled, and he thereupon entered into negotiations with the defendant for the purchase of a house and lot in Ogden City. Defendant made and executed a bond for deed to the house and lot in favor of plaintiff, who accepted and retained the same. Plaintiff was given credit in this bond for the $750 on the purchase price of the house and lot. True, he testified that "I never agreed to take the house; I never accepted that house no way." This was, however, only his conclusion and not a statement of fact. The evidence to which we have referred, shows conclusively that a contract was made and entered into by plaintiff for the purchase of the house and lot; and that he was given credit on the purchase price thereof for the $750 in question. And there is not a scintilla of evidence in the record which tends to show that defendant has failed in any particular to carry out his part of the contract, but, on the contrary, the evidence introduced by plaintiff himself shows that defendant is both able and willing to perform and discharge every obligation required of him by the terms of the contract.

We are of the opinion, and so hold, that defendant was entitled to the peremptory instruction asked for, and that the court erred in refusing to give it.

The judgment is reversed. It is ordered that the costs of this appeal be taxed against respondent.

STRAUP and FRICK, JJ., concur.