JOHN E. LAKE, Appellee, v. WILLIAM BERNSTEIN, Appellant.

No. 41103.

NOVEMBER 17, 1931.

OPINION ON REHEARING FEBRUARY 14, 1933.

John E. Lake, for appellee.

McCoy & McCoy, for appellant.

KINDIG, C. J.—On July 5, 1928, the defendant-appellant, William Bernstein, agreed to sell to D. S. Shute, and the latter agreed to buy from the former, Lot 7 of a certain subdivision in or near Oskaloosa. The consideration agreed upon for this property was $3,500. Of this sum Shute paid the appellant $1,200 in cash, and the remaining $2,300 was to be paid on August first thereafter. A deed conveying the land to Shute was duly executed by Bernstein and delivered in escrow to the Mahaska County State Bank, in Oskaloosa. Apparently the only written agreement relating to the transaction up to this time was a memorandum executed by the appellant and Shute, reading as follows:

"Oskaloosa, Iowa, July 5, 1928.

"Deed left in escrow by Wm. Bernstein [appellant] to be given to Mr. D. S. Shute [the purchaser] on payment of the sum of $2,300 to be paid on or before the 1st day of August, 1928."

When August first arrived, Shute found that he could not pay the balance due on the purchase price of the real estate, and consequently demanded further time. To this the appellant agreed, and the following notation was endorsed upon the paper containing the above-named memorandum, and signed by the appellant and Shute:

"Time extended on property for deed and now agreed to be taken up and paid for with interest at rate of 7% on or before November 1, 1928."

But when November 1, 1928, arrived, Shute could, or would, not pay the $2,300. According to the appellant, Shute abandoned the contract, and, on November 2, 1928, the appellant served upon

Shute a notice of forfeiture. Shute made no claim to the property after November 1, 1928, nor did he demand from the appellant the initial payment of $1,200 made by him on the contract. At no time did Shute demand the deed or offer to pay the balance due on the purchase contract.

So, on March 30, 1929, the appellant sold the real estate to Pearl May Hamilton, and conveyed the same to her by a warranty deed. Thus the matter rested until November 24, 1930, when Shute assigned his alleged interest in the foregoing contract of purchase to the plaintiff-appellee John E. Lake, an attorney at Oskaloosa.

On November 26, 1930, the appellee commenced the present action to recover from the appellant the $1,200 originally paid by Shute as the initial payment on the above-named contract of purchase.

The appellant defended the suit on the theory that Shute abandoned the contract of purchase. Because of such abandonment by Shute, without any fault on appellant's part, the appellant contends that Shute's assignee cannot now recover the initial payment made under the contract. It is said by the appellant that he at no time was in default, but was always ready and willing to perform the contract. Default arose, the appellant declares, on Shute's part because he did not pay the deferred amount of the consideration. Consequently, the appellant concludes that after Shute abandoned the contract he had a right to retain the initial payment above mentioned and resell the real estate to another purchaser.

In reply to the appellant's contention, the appellee urges that the contract was not one that could be forfeited under the statute, because there is no provision therein for forfeiture and time is not made the essence of the contract. So the appellee maintains that it was necessary for the appellant to terminate the contract in some way other than by serving the notice of forfeiture. A mere non-payment of the deferred consideration, the appellee argues, did not terminate the agreement. While the contract was thus in existence, the appellee declares that the appellant, by reconveying the property, put himself in a position where he could not perform said agreement with Shute, the original purchaser. The appellee says that he could, and did, rescind the contract because the appellant thus put himself into the position where he could not fulfill the agreement. Therefore, the appellee asserts that he can recover the initial payment made by Shute, as before explained.

When determining the case, the district court found that the purchaser, D. S. Shute, "made default, and, under the testimony, abandoned his contract." Nevertheless the district court found for the appellee and entered judgment against the appellant for $1,200 and interest on the theory that as a matter of law, the above-mentioned notice of forfeiture did not terminate the contract; that the same remained at all times in full force and effect; that the appellant, through the resale, put it beyond his power to convey to the original purchaser Shute the real estate named in the contract, and therefore Shute had a right to rescind the agreement. Because of the rescission, the district court further found, as a matter of law, that the appellee could recover the $1,200 paid by Shute to the appellant on the initial payment under the contract.

I. Sections 12389 and 12390 of the 1931 Code provide for the forfeiture of real estate contracts. These sections were the same in the 1924 and 1927 Codes. If the contract to convey real estate provides for a forfeiture or makes time the essence of the agreement, and the vendee is in default, the forfeiture of the vendee's interest in the contract may be obtained by the vendor by serving the notice required under the foregoing statutes. Westerman v. Raid, 203 Iowa 1270.

In the case at bar, however, there was no provision in the real estate contract for a forfeiture, nor was there a stipulation therein making time the essence of the contract. Consequently the appellant could not procure a forfeiture of Shute's interest in the real estate by serving notice of forfeiture. Frederick v. Davis, 133 Iowa 362; Cody v. Wiltse, 130 Iowa 139; Converse v. Elliott, 200 Iowa 1023.

Obviously, then, unless Shute's interests in the contract were terminated by abandonment, the district court's judgment is correct.

II. Where the vendor has in all respects performed his part of a contract, and the vendee is in inexcusable default in failing to make further payment, as required by the contract, the latter cannot recover, from the former, money paid as an initial or a prior payment. This is true even though the contract does not provide for a forfeiture. Downey v. Riggs, 102 Iowa 88; Mintle v. Sylvester, 202 Iowa 1128; Dimon v. Wright, 206 Iowa 693. Concerning this question, it was said in Dimon v. Wright, just cited, reading on pages 697 and 698:

"A court of equity will not permit a person to profit by his

own breach of contract and to benefit by his own wrong. See Downey v. Riggs, 102 Iowa 88. The vendees in the instant case held the land in subordination to their vendors until there was a compliance with the conditions of the contract by the vendees. There was no mutual rescission of the contract in suit. There was no default on the part of the vendors, nor were the vendors incapable or unwilling to perform the contract. There was no fraud. This lawsuit is the consequence of the unexcused default of the vendees in making payments as called for by the contract, and to permit the vendees to recover the initial payment would be the placing of a premium on the violation of contracts. It is clear that the defendant-vendees refused to proceed further with the contract, and thereby waived further performance by the vendor."

In the case at bar. it is claimed by the appellant that the appellee is not entitled to recover in the present suit because of the bar arising under the above principles of law. As before said, the appellee, in reply to the appellant's contention in this regard, says that because of the appellant's default there is no bar to his right to recover in this case. This is true, the appellee declares, because the appellant, in making the resale, put himself in a position where he could not perform. Therefore a situation arose where the appellee could rescind the contract. Of course, if the contract was legally rescinded, the appellee can recover the initial payment thereunder, as he was allowed to do by the district court. Frederick v. Davis (133 Iowa 362), supra; Converse v. Elliott (200 Iowa 1023), supra.

But, as before said, the district court in the case at bar found that the purchaser D. S. Shute "made default, and, under the testimony, abandoned his contract." Under the evidence, this finding of the district court is fully supported. There are at least four items in the record that support this finding of the district court:

First, the appellant testified that after November 1st he had a talk with Mr. Shute, the purchaser, in regard to the latter's default. During this conversation, according to the appellant, Shute said that he could, and would, not perform the contract. Shute's reason for this non-performance, the appellant explains, was a divorce proceeding between the former and his wife. In that divorce proceeding the wife was seeking alimony. Fearing that she would obtain the property in question as alimony, Shute, the appellant

says, indicated that he would not continue with the contract. Concerning the $1,200, Shute, according to the appellant, said:

"He [Shute] didn't want her [Shute's wife] to have anything in it [the property in question] and he [Shute] would rather lose that $1,200. He [Shute] didn't want to have anything more to do with it [the $1,200 in question]."

Second, the appellant is corroborated in this testimony by the witness I. C. Johnson, an attorney in Oskaloosa. Johnson says that in a conversation with Shute and his attorney, Mr. Davis, which took place on or after November 1, 1928, the statement was made by Shute, or Davis, that Shute "was having trouble with his wife," that a divorce action was pending, and that Shute did not want his wife to collect alimony. Accordingly, Shute proposed, this witness says, either by himself, or through his attorney, at the time, "to abandon this contract and throw it up."

Third, a stipulation of facts was entered into by the parties in this suit. Among the matters thus stipulated is the following:

"November 1, 1928, and during the time stipulated in the notice of forfeiture [above named], a divorce action was pending in the district court in and for Mahaska County, Iowa, between Bessie Shute and D. S. Shute [the purchaser previously mentioned]; that growing out of said divorce proceeding there was had on March 9, 1929, contempt proceeding entitled 'In the case of D. S. Shute v. Bessie Shute * * *', being an action to discover what property, if any, the said D. S. Shute had at that time. And for the further purpose of showing cause why he [Shute] should not be found in contempt because of his failure to pay certain alimony to the said Bessie Shute, and that the said D. S. Shute testified to the following in said contempt proceeding: * * *

" 'Q: And that is all of the money you had [the $1,200 paid as the initial payment, as previously stated]; well, you paid the $1,200 [to the appellant]? A. Yes, sir, I paid it. * * *

" 'Q. And you never could pay the rest; or never did pay the rest [the $2,300 deferred payment under the contract]? A. No, sir.

" 'Q. And you let the property go, you lost the amount you paid on it, is that right? A. Yes, sir.

" 'Q. And you have no money or property now, at all you say? A. No, sir.' "

Fourth, Shute, the purchaser, after refusing to pay the balance on the real estate contract purchase price, made no claim for the property, or the $1,200 paid under the contract, for a period of approximately two years. The assignment of Shute's alleged interest in the contract was made at the instance of the appellee.

Therefore, it can be seen plainly that, although the testimony of the appellan. and his witnesses, above named, was in some respects contradicted by the appellee and his witnesses, the finding of the district court in reference to the abandonment is supported by the four propositions just set forth. There being an abandonment of the contract by Shute, as found by the district court, at a time when under the uncontradicted record the appellant was not in default, the appellee cannot recover the initial payment of $1,200, as indicated by the cases before cited under this division, unless, because of the resale, a rescission of the contract arose.

After the district court found the aforesaid abandonment as a matter of fact, it then concluded, as a matter of law, that because of the resale of the property by appellant a rescission of the contract did arise. An intention not to be bound by a real estate contract is not evidenced by the vendor in serving the notice of intention to declare a forfeiture of the agreement, even though there is no stipulation for a forfeiture and time is not made the essence of the undertaking. Mintle v. Sylvester (202 Iowa 1128), supra, local citation 1133 and 1134. So the act of the appellant in the case at bar in serving the notice of forfeiture under the circumstances did not amount to an abandonment of the contract on his part or an election by him to rescind. By serving the notice of forfeiture, the appellant was attempting to maintain the contract rather than repudiate or nullify it. Mintle v. Sylvester (202 Iowa 1128), supra. Furthermore, under the circumstances, the appellant did not terminate or repudiate the contract when he resold the property at the time and in the manner and way above described. The resale to Pearl May Hamilton, the second purchaser, on the 30th day of March, 1929, did not amount to an abandonment of the contract by the appellant or give rise to the rescission thereof. Because the purchaser, Shute, abandoned the contract, as found by the district court, and fully indicated by the evidence, the appellant, under the

record in the case at bar, had a right to rely on such abandonment and resell the property. When so doing, the appellant did not terminate or rescind the contract, but rather maintained and supported the same. As said in Dimon v. Wright (206 Iowa 693), supra, reading on page 698:

"It is clear that the defendant-vendees refused to proceed further with the contract, and thereby waived further performance by the vendor."

Again, the Supreme Court of Pennsylvania approved the following language in Sanders v. Brock, 79 A. 772; 35 L. R. A. (N. S.) 532:

"It would be an alarming doctrine to hold that the plaintiffs (vendees) might violate the contract; and, because they chose to do so, make their own infraction of the agreement the basis of an action for money had and received. Every man who makes a bad bargain, and has advanced money upon it, would have the same right to recover it back that the plaintiffs (vendees) have. *The defendant's* (vendor's) *subsequent sale of the land does not alter the case;* the plaintiffs (vendees) had not only abandoned the possession, but expressly refused to proceed, and renounced the contract. To say that the subsequent sale of the land gives a right to the plaintiffs (vendees) to recover back the money paid on the contract would, in effect, be saying that the defendant (vendor) *could never sell it without subjecting himself to an action by the plaintiffs* (vendees). Why should he not sell? The plaintiffs (vendees) renounced the contract, and peremptorily refused to fulfill it; it was in vain, therefore, to keep the land for them. *The plaintiffs* (vendees) *cannot, by their own wrongful act, impose upon the defendant* (vendor) *the necessity of retaining property which his exigencies may require him to sell.* This would be most unreasonable and unjust, and is not sanctioned by any principle of law." (Italics are ours).

To the same effect see Annotations L. R. A. 1918B, 540; Gibson v. Brannum, 230 Pac. 861 (Okla.); Rafferty v. Gaston, 204 Pac. 595 (Wash.); Beatty v. Wintrode Land Co., 155 Pac. 574 (Okla.); Helm v. Rone, 141 Pac. 678 (Okla.); King v. Milliken, 143 N. E. 511 (Mass.); 27 R. C. L., 624, sec. 378.

A distinction, of course, must be made between the forfeiture of a vendee's rights under a contract by notice in the way provided

by statute, and the forfeiture of those rights by abandonment. In the one case the vendee loses his property through the contract and the statute and in the other he loses it through his own voluntary action in abandoning the property. Of course, the mere failure to pay the purchase price, as provided by a real estate contract, does not in itself work a forfeiture or an abandonment. If there is no forfeiture, as contemplated by the contract and the statute, and also there is no abandonment, then the vendor's remedy against the vendee is to foreclose his contract as if it were a mortgage, or sue for the purchase price. Here, in the case at bar, however, as found by the district court, there was an abandonment by the purchaser, Shute. That being true, the district court erred as a matter of law in holding that the resale of the property by the appellant after the appellee's abandonment gave rise, under the circumstances, to a rescission.

Whether there would have been a rescission because of the appellant's resale of the property had there been no abandonment by the purchaser Shute. we do not now decide or suggest.

Wherefore, the judgment of the district court must be, and hereby is—Reversed.

EVANS, ALBERT, ANDERSON, KINTZINGER, DONEGAN, UTTERBACK, and MITCHELL. JJ., concur.

STEVENS, J., took no part.