185 P.2d 311

HILLMAN et ux. v. BUSSELLE et ux.

No. 4962.

Supreme Court of Arizona.

Oct. 6, 1947.

Cusick & Lyons, of Tucson, for appellants.

Frank W. Steel, of Tucson, for appellees.

UDALL, Justice.

This is an appeal from a judgment denying recovery in an action brought by plaintiffs (appellants) against defendants (appellees) for: (1) The return of earnest money paid on an executory contract for sale of a parcel of realty known as the Cable Hotel in Douglas, Arizona, and (2) for alleged damages resulting from defendants' failure to convey. The case was ried to the court without aid of a jury.

Defendants were the owners of the realty in question and the only portion of the contract to sell to plaintiffs which was in writing was the receipt given for the earnest money as follows:

"2/25/46

"Received of Anna Hillman
Deposit of $300.00 on the Cable
Hotel in Douglas, Arizona
Bal.—Due $7200.00 on closing date
                "C. W. Busselle"

Prior to this transaction defendant vendors had leased the hotel until August 10, 1948, to one George Shepard and wife, who, during the entire period here in question, remained in actual possession of the property. A provision of this lease, duly recorded in Cochise County, gave lessees the option to purchase the property for $6500 at any time prior to the expiration date thereof.

Defendants testified that lessees were willing to vacate the premises and relinquish their lease if a sale for the property was made as the latter were experiencing difficulty in operating the hotel at a profit, whereas the deposition of one of the lessees, Mrs. Shepard, admits their willingness to vacate the premises but only on condition that purchasers buy their leasehold interest which included the option to purchase. Admittedly there were no dealings between plaintiff vendees and the lessees looking toward such a sale, and clearly defendant vendors could not properly complete their sale to plaintiff vendees without obtaining the release of lessees' option to purchase which reads:

"And parties of the first part (defendant vendors) agree that during the terms of this Lease Indenture and option they will not divest themselves of title of said property without the written consent and relinquishment of this option on the part of parties of the second part" (lessees). Explanatory material supplied.

On May 4, 1946 plaintiffs advised defendants that they were prepared to complete the purchase and asked that a deed be submitted for their inspection. On May 10, 1946, a formal tender was made of the $7200 balance due. It was not until then that plaintiffs learned from Mrs. Shepard that she and her husband, the lessees, had exercised their leasehold option to purchase the hotel property, and that on April 24, 1946, they had received a deed for the premises from defendants. After futile efforts to procure a refund of their down payment, plaintiffs brought this suit.

In the complaint, much is made of the allegation "that the existence of said option was to the plaintiffs unknown." Defendants' answer states "that said plaintiffs were fully aware of said lease and option both before and after making their said deposit, and made no complaint with reference thereto, until the filing of their complaint herein." The testimony taken on this point is sharply conflicting for while plaintiffs denied any knowledge of an option, defendants testified that plaintiffs were fully advised by them, and it is admitted by both parties that one of the plaintiffs, before making the down payment on February 25, 1946, went to Douglas, Arizona, and there conversed with the Shepards about their lease on the property. The trial court in denying recovery to plaintiffs necessarily must have believed that plaintiffs knew or should have known of the option clause in

the lease, all of which was on record in the County Recorder's office. Part of the evidence would support such a finding, and, relying alone on the non-conflicting portion thereof relating to plaintiffs' knowledge of the leasehold and experience in real estate operations, the court might well have applied the rule of law that actual notice of a fact will be charged to one who has notice of other facts and circumstances which, if followed, would lead to knowledge of the fact in question. There is no evidence that defendants told plaintiffs there was no option, the only charge being that they did not expressly call their attention to the fact of its existence.

■ In reviewing the evidence it is beyond the proper scope of an appellate court to weigh it for the purpose of determining its preponderance upon disputed questions of fact. We are concerned only with whether facts do exist which might reasonably support the judgment, Christy v. Arnold, 4 Ariz. 263, 36 P. 918, and if they do, it becomes our duty to see that the judgment is sustained. Maricopa County Municipal Water C. Dist. No. 1 v. Roosevelt Irrigation District, 39 Ariz. 357, 5 P.2d 898.

Although it might not be apparent from a reading of counsels' briefs in this case, a great many decisions have been written over the years on the subject of a vendee's right to recover purchase money paid. Some of the more important ones are collected and discussed in 55 Am.Jur., Vendor and Purchaser, Sec. 535 and ff.; 66 C.J., Vendor and Purchaser, Sec. 1555 and ff; Nicolopoolos v. Hill, 217 Ala. 589, 117 So. 185, 59 A.L.R. 185-275; Lake v. Bernstein, 215 Iowa 777, 246 N.W. 790, 102 A.L.R. 846-914; Seekins v. King, 66 R.I. 105, 17 A.2d 869, 134 A.L.R. 1060-1100. See also Professor Arthur Corbin's highly instructive article, "The Right of a Defaulting Vendee to the Restitution of Installments Paid," 40 Yale L.J. 1013.

The general rule or starting point as set forth in the early Supreme Court case of Hansbrough v. Peck, 5 Wall, U.S., 497, 18 L.Ed. 520, is that a vendee in default (as, by the trial court's decision, we must assume this vendee to be) cannot recover back the money he has paid on an executory contract. And this is true though the contract is oral and could not be enforced against the purchaser because of the Statute of Frauds, 49 Am.Jur., Statute of Frauds, Sec. 564; though the contract contains no forfeiture clause per se, Seekins v. King, 66 R.I. 105, 17 A.2d 869, 134 A.L.R. 1060; and it is true under certain circumstances even if the vendor after vendee's default has resold the property to another, 55 Am.Jur., Vendor and Purchaser, Sec. 539.

The rule has served, and properly so, more as a point of deviation than anything else. In situations akin to the case at bar some jurisdictions still uniformly refuse restitution regardless of the equities involved on the theory that one who breaches a contract should not be allowed to take

advantage of his own wrong. See: L.R.A. 1918B, 540 and extensive A.L.R. notes cited supra.

Certain of the mid-western courts have taken the lead in finding a recission by vendor and, therefore, granting restitution to the vendee if vendor has resold after vendee's default but without an "effectual termination" of vendee's rights. They have distinguished between a vendee who defaults on his contract (by being late in payment, for example) and one who abandons his contract (e.g. by making it clear that he has no intention of continuing payment at all). Restitution is allowed in the former and denied in the latter instance in an attempt in these cases to harmonize the conflicting principles of unjust enrichment and abhorrence of forfeiture on the one hand and stability of contract on the other. Himebaugh v. Chalker, 261 Mich. 80, 245 N.W. 576; Schon v. Lawrence, 258 Mich. 543, 242 N.W. 745; Pierson v. Dorff, 198 Wis. 43, 223 N.W. 579; Lake v. Bernstein, 215 Iowa 777, 246 N.W. 790, 102 A.L.R. 846-914.

Perhaps the most liberal rule of all, set forth in Professor Corbin's article, supra, allows restitution to a vendee who has committed a "total breach," "breach going to the essence," or what would be considered an "abandonment" by the Himebaugh, Schon, and Pierson cases, supra, if the vendee can show vendor's damage to be less than the total of vendee's payments. The amount of the restitution would, however, be limited to the difference between these two figures.

In the case at bar it is impossible to find facts to support the theory of "abandonment" or "total breach." The only shred of evidence in this direction is defendants' testimony that the transaction was to be completed as soon as possible "after the first of the month" (March, 1946) and that plaintiff vendees failed to tender payment until May 10, 1946. Opposed to this are the following: (1) Time was not made the essence of this contract. (2) Vendors had failed to furnish either the necessary information to allow vendees to conduct a proper title search or to furnish a deed of conveyance for vendees to inspect, both of which vendees had previously requested. (3) Vendors, for a while, at least, considered themselves bound to sell to plaintiffs. Mr. Busselle testified that he had refused an offer from a third party of $8,500 sometime in March because "the Hillmans had a deposit on that and I could not accept it." And yet the vendors allowed the lessees to exercise their option to purchase in mid-April without (a) making any demand upon plaintiffs to perform or (b) warning them that their interests were being foreclosed. (4) Vendees were experienced real estate operators and were well acquainted with the fact that they had made a good bargain. They readily agreed with vendors that the Cable Hotel property was worth at least $1,000 more than the amount of their contracted purchase price,

and even set that up as basis of claim for damages. Neither the logic of the situation nor their activities of selling bonds and property to raise money for this purchase indicate an intention to abandon the contract. On the contrary, the whole picture is that of a full-scale effort to be able to complete it. Even assuming in each case of disputed testimony that defendant vendors' version is correct, the most we can charge the vendees with is a certain laxity in not paying or tendering payment at an earlier date. But when taken together with surrounding facts and circumstances this default in time of payment (two months at the most) can hardly be considered as an abandonment.

■ In addition, as defendant vendors at no time were certain that they could or would be able to convey to plaintiffs (because at no time had they secured the written consent and relinquishment of lessees option to purchase as required by the lease), and as they had failed to perform other conditions precedent to forfeiture such as supplying the promised deed of conveyance or giving vendees notice of forfeiture, the most that can be said is that both vendors and vendees were in default and, therefore, vendors' sale to lessees constituted a recision at law entitling plaintiff vendees to the return of their earnest money. As our court pointed out in United Farmers' City Market v. Donofrio, 43 Ariz. 35, 49, 29 P.2d 144, 149:

"The cases where the purchaser may maintain an action to recover back money paid by him under a contract for the purchase of real estate, where the contract has been rescinded, are: (1) Where the recision is voluntary and with the mutual consent of the parties, and without default on either side; (2) where the vendor can not or will not perform the contract on his part; (3) where the vendor has been guilty of fraud in making the contract; (4) where, by the terms of the contract, it is left in the purchasers power to rescind it by any act on his part, and he does so; and (5) where neither party is ready to complete the contract at the stipulated time, but each is in default."

■ Finally, it would be manifestly unfair and inequitable and constitute an unjust enrichment to permit defendants to retain the earnest money paid them by plaintiffs. First because there is no showing that they were damaged by any act of plaintiffs; the damage, if any, resulting from acts of their own. Second, because the acts of defendants do not show entire candor or good faith in both their failure to warn plaintiffs before attempting to work a forfeiture, and their failure to live up to the conditions precedent of supplying the promised deed of conveyance for inspection or of getting a formal release from the lessees of at least that part of the lease containing the option to buy. And last, it is to be observed that the contract between the par-

ties does not contain any forfeiture provision. As was stated in Malmberg v. Baugh, 62 Utah 331, 218 P. 975, 979:

"There is nothing in the contract, unless it can be read between the lines, by which they agreed to forfeit payments on the purchase price. Equity abhors a forfeiture, and the law does not favor it. This is elementary; * * *."

Under all but the strictest rule, and under the theories of recission, default as opposed to abandonment, and unjust enrichment, then, the vendees are entitled to restitution of their down payment. And Arizona has long ago adopted the more liberal view and approach to these cases. Quoting from Christy v. Arnold, supra [4 Ariz. 263, 36 P. 920.]:

"The rule, as laid down by Sutherland in his work on Damages (volume 2, p. 232), is that 'on principle, if a contract is rescinded by the vendor, even for the vendee's default, the vendor should restore what he has received upon it; * * *.'"

At the same time, the vendees because of their own default in being late on payment foreclose their right to any damages they may have sustained, such as loss of profit.

For the above reasons the judgment of the lower court will be affirmed in part and reversed in part. It will be reversed in that plaintiff vendees shall now recover their down payment; and it will be affirmed in that they shall take nothing more.

STANFORD, C. J., and LA PRADE, J., concur.