YOUNG et ux. v. HANSEN et ux.

No. 7428.  Decided May 16, 1950.  (218 P. 2d 666.)

See also, 117 Utah 607, 218 P. 2d 674.

See 17 C. J. S., Contracts, sec. 569. Partial performance of contracts as to sharing profits, reconveyance of benefits from, see note, 40 A. L. R. 34. See, also, 12 Am. Jur. 905.

*Gaylen S. Young,* Salt Lake City, for appellants.

*Rich & Elton,* Salt Lake City, for respondents.

LATIMER, Justice.

Plaintiffs appeal from an adverse judgment entered in the court below in a suit to recover certain sums of money paid to the defendants.

The facts out of which this controversy arises are these: On or about the 14th day of May, 1948, the plaintiffs and defendants orally agreed that plaintiffs would pay to the defendants the sum of $9,000 for an undivided one-half interest in certain real and personal property then owned by the defendants, with the understanding that a partnership would be formed and a partnership agreement drafted and executed, the terms of which would be agreed upon at a future date. The plaintiffs claim the parties agreed that the sum of $9,000 was to be paid when plaintiffs sold their home, and, that if a sale was not made by November 15, 1948, then the defendants were to complete the transfers and conveyances and the plaintiffs were to pay to the defendants the sum of $50 per month between November and the time when the home was sold, the remaining balance to be paid upon the sale. Defendants, on the other hand, contend that time was of the essence and the $9,000 was to be paid in full by November 15, 1948, without regard to the sale of plaintiffs' premises.

The oral agreement contemplated that plaintiffs were to occupy a certain portion of the premises owned by the defendants and that prior to the execution of the written partnership agreement and the payment of the full pur-

chase price, the parties were to operate the farm and raise and sell certain farm animals, chickens and rabbits, on a profit or loss arrangement whereby each would pay one-half the costs and divide in equal parts the profits or losses.

Plaintiffs contend that during the month of July, 1948, defendants who had a mortgage on their home, importuned the plaintiffs not to await a sale but to mortgage the home and make a part payment on the $9,000; that they mortgaged their home, obtained $4,000 and paid that sum to defendants, and that the oral contract was modified to the extent that the documents conveying title and the partnership agreement would be executed forthwith. It was defendants' contention that the $4,000 was a part payment on the $9,000 and that there was no modification of the original oral agreement.

It is undisputed that plaintiffs paid to defendants the sum of $4,000 and in addition sold certain household furniture and equipment for which they received a credit of $60; and it is further undisputed that the plaintiffs moved into the premises and that they together with the defendants worked in unison for a short while in accordance with their understanding of the oral agreement. As is not unusual when families try to work and live together, frictions soon developed and difficulties were encountered. Plaintiffs claim that defendants breached the contract by refusing to execute the necessary documents for the transfer of title to a one-half interest in the property after payment of the $4,000 and by refusing to discuss or consider the terms of the contemplated written partnership agreement. On the other hand, defendants assert that the plaintiffs breached the contract in not making full payment within the time agreed upon.

We are not disposed to reconcile the inconsistencies in the testimony of the parties and determine whether or not the plaintiffs carried the burden of proving defendants' default. The trial judge apparently treated the suit as

being one strictly in contract in which plaintiffs were not entitled to any relief unless they established by a preponderance of the evidence that defendants had breached the contract and that they were without fault. In certain types of actions on contracts this is a salutary rule of law, but in the present instance it has little, if any, application.

If we consider the issues as framed by the pleadings then defendants do not deny an oral contract, the receipt of the money or the partial performance by plaintiffs. They, the defendants, do not ask for affirmative relief, they do not offer to perform, they allege no damage, they acknowledged a partnership is now undesirable, and they do not offer to execute the legal document necessary to perform their part of the agreement. All they attempt to do is to thwart plaintiffs' attempt to recover by alleging plaintiffs breached the contract and are without remedy because of their default. The trial court apparently adopted this theory.

We believe that in adopting respondents' theory, the trial judge overlooked the principle that under certain circumstances a plaintiff who fails to fully perform his contract is entitled to a judgment for the amount he contributes to the defendant over and above the amount of harm he has caused to the defendant by his own breach. In this connection, we quote from paragraph 357, Restatement of the Law of Contracts, page 623:

"(1) Where the defendant fails or refuses to perform his contract and is justified therein by the plaintiff's own breach of duty or non-performance of a condition, but the plaintiff has rendered a part performance under the contract that is a net benefit to the defendant, the plaintiff can get judgment, except as stated in Subsection (2), for the amount of such benefit in excess of the harm that he has caused to the defendant by his own breach, in no case exceeding a ratable proportion of the agreed compensation, if

"(a) the plaintiff's breach or non-performance is not wilful and deliberate; or

"(b) the defendant, with knowledge that the plaintiff's breach of duty or non-performance of condition has occurred or will thereafter

occur, assents to the rendition of the part performance, *or accepts. the benefit of it, or retains property received although its return in specie is still not unreasonably difficult or injurious.*

"(2) The plaintiff has no right to compensation for his part performance if it is merely a payment of earnest money, or if the contract provides that it may be retained and it is not so greatly in excess of the defendant's harm that the provision is rejected as imposing a penalty.

"(3) The measure of the defendant's benefit from the plaintiff's part performance is the amount by which he has been enriched as a result of such performance unless the facts are those stated in Subsection (1b), in which case it is the price fixed by the contract for such part performance, *or, if no price is so fixed, a ratable proportion of the total contract price.*" (Emphasis added.)

In the comments on the subsection the principle is limited to those cases where the defendant refuses to perform as he agreed. Subsection (b) is as follows:

"The rules stated in the present Section are applicable only in those cases where the defendant refuses to perform as he promised and is justified in so doing by the plaintiff's breach or non-performance. The contract may be such that the defendant still has a right to specific performance in full by the plaintiff; and if he insists thereon, remaining able and willing to perform his part, he may keep whatever he has received and maintain suit for the balance that is unpaid."

The defendants in this case admit only a token performance on their part, and this only in connection with a short term operation of the joint venture. They do not allege or prove a willingness to perform their part of the contract. Their testimony substantiates a finding that conditions arose which made a partnership agreement between the parties impossible and a further finding that they would not convey a one-half interest in the property to plaintiffs. The principal reason for defendants not complying with their agreement to furnish deeds and bills of sale and to enter into a partnership contract is because, as they claim, Plaintiffs first breached the oral contract. In view of the manner in which the difficulties arose, it

is difficult to place the blame on either of the parties. But conceding for the purpose of this decision that plaintiffs' non-performance is the first breach of the oral contract for which the defendants have a right to claim damages, we see no reason why defendants should retain both the property and the money. Plaintiffs' predicament is illustrative of the injustice that could be imposed if courts permitted the defendants to retain the benefits acquired from part performance on the part of the plaintiffs. Certainly, the benefits received by the defendants in this case are greatly in excess of any damages they have suffered, and to let them retain the property and the $4,000 payment would, in effect, give defendants this latter amount for nothing. Moreover, it would exact from plaintiffs a sum far in excess of any monetary damage suffered by the defendants.

We cast out the exception mentioned in sub-paragraph 2 of paragraph 357, Restatement of the Law, supra. We are not here dealing with a small token payment, which is given pursuant to the terms of a contract permitting the payment to be forfeited upon non-compliance with the terms. We are dealing with a substantial sum of money, which paid for almost fifty per cent of the interest the plaintiffs were to receive in land and property of an agreed value of $9,000. The payment was not an earnest money payment as the parties did not so contemplate. The contract did not provide for retention of the money and even if it did, it is questionable that such a provision could be enforced, as defendants would acquire an unconscionable advantage and be unjustly enriched at the expense of plaintiffs as there is no showing that defendants have suffered any damage. While admittedly the parties operated either a partnership or joint venture for a short period of time, the evidence indicates that a fair share of the expenses were paid by plaintiffs; that a certain amount of work or services were performed by them; that the defendants obtained certain permanent improvements on their premises because of the efforts of the plaintiffs; and, that for the

most part, any profits or losses arising out of the venture were shared equally. This is far from a showing that defendants suffered any substantial damage as a result of the venture or of the breach.

We need not consider plaintiffs' breach as being without semblance of excuse. It is unreasonable to insist that a person perform more fully than did plaintiffs without some degree of security. A payment of $4,000 was made without a receipt being given. No security was offered by defendants and no written partnership agreement was prepared. When friction began to develop and it became apparent that the partnership venture would not succeed, there appears good reason why the plaintiffs should not be called upon to pay the remaining $5,000 until written documents were prepared and the terms of the partnership agreement determined. Accepting defendants' version of the agreement, the payment of the remaining balance should have been contemporaneous with the execution of the documents, and until the terms of the partnership were agreed upon, and a contract prepared for execution final payment could not be expected. Defendants have apparently treated the arrangement as placing all burdens on the plaintiffs and none on themselves.

Even were we to go one step further and assume that the breach was without reasonable justification, the plaintiffs are not entirely without remedy. Referring again to the same paragraph of Restatement of the Law of Contracts, (paragraph 357, page 623, supra) under Comments, Subsection f, the following rule is announced:

"Even though the plaintiff's breach is wilful and without semblance of excuse, the defendant must restore the excess of benefit over harm if, with knowledge that the breach has occurred or is impending, *he assents to the part performance, or retains it or accepts the benefit of it unreasonably.* If the part performance is received without such knowledge and is of such a character that it cannot be returned in specie without unreasonable difficulty or sacrifice, it may be retained without making restitution, even though it exceeds the injury. Such is sometimes the case when the part performance has been incor-

porated with the defendant's land or goods. Doubts in cases of this kind are resolved in favor of the plaintiff, in order to avoid a forfeiture in excess of harm suffered." (Emphasis added.)

In Williston on Contracts, Revised Edition, Vol. 5, Section 1473, we find discussed the right of recovery by one who has broken his contract. In that paragraph we find the following statement of the law:

"Few questions in the law have given rise to more discussion and difference of opinion than that concerning the right of one who has materially broken his contract without legal excuse to recover for such benefit as he may have conferred on the other party by part performance of an indivisible contract or by the performance of an indivisible fraction of a divisible portion of a contract. A satisfactory solution is not easy, for two fundamental legal policies seem here to come in conflict. On the one hand, it seems a violation of the terms of a contract to allow a plaintiff in default to recover—to allow a party to stop when he pleases and sell his part performance at a value fixed by the jury to the defendant who has agreed only to pay for full performance. *On the other hand, to deny recovery often gives the defendant more than fair compensation for the injury he has sustained and imposes a forfeiture on the plaintiff. The mores of the time and place will often determine which policy will be followed. But the second of these opposing policies has steadily increased in favor in recent years.* Except where the obliquity of the defective performance is of a sort that indicates moral obliquity, and where, therefore, the courts feel that the one who is in default may properly be penalized, the tendency is to grant him restitution if a substantial net benefit has accrued to the defendant by partial performance." (Emphasis added.)

Defendants rely to a great extent upon their contention that the plaintiffs alleged a contract, a breach, and sought damages for their recovery; and, that by so doing, the issues necessarily confined plaintiffs to establish their cause of action by proving a breach on the part of the defendants. This is too narrow a construction of the law and of the pleadings. In this instance, the allegations of and admission in the pleadings are sufficient to establish a contract and the only elements remaining which must be alleged and proven are either a breach on the part

of defendants or their refusal to perform and the damages suffered. If plaintiffs fail to establish a breach by defendants but do establish a refusal to perform by them, under the principles of law announced, plaintiffs are not precluded from recovering the amount paid. The action is in contract and the damages are determined by the amount paid or the reasonable value of part performance, less the damages suffered by defendants. Defendants might allege and establish that they did not default first so as to permit them to establish and offset their damages against plaintiffs' claim, but this would not foreclose plaintiffs from recovering on the theory that defendants' refusal to perform had unjustly damaged plaintiffs and unjustly enriched defendants.

The judgment is reversed with directions to grant a new trial. Costs to appellant.

WADE, J., concurs.

WOLFE, Justice (concurring).

I concur. In this particular case the plaintiff had paid $4,000. Had he paid nothing, the defendant could only have recovered what he was actually damaged by his default, had defendant himself been free from default. If defendant had defaulted the plaintiff would have been able to recover only his damages. It appears to be plainly inequitable for one on the receiving end of the transaction to keep all the money paid if it exceeds compensation for the harm done just because he is in the position of being on the receiving end.

Where a written contract for the sale of real estate contains a provision for forfeiture or a provision that installment payments made may be retained by the seller as liquidated damages, the courts determine whether the amounts received by the seller are greatly in excess of the fair rental value and any extra ordinary wear and tear and if so, treat it as a penalty and require remission. This is a de-

vice to do equity. I see no reason why we should not meet the situation openly and honestly and without benefit of subterfuge. So much for a simple case of purchase and sale of realty or personalty.

In this case there seems to have been so much cloudiness in the whole history of the transactions that it was doubtful from the evidence which party or whether both parties were not in default. The lower court hesitatingly found that the plaintiff only was in default. Therefore, if in a clear cut case of plaintiff's default he is able to recover a definite excess paid, he should be able to do so in this case. This is an aggravation of a clear cut case. The defendant in this case asserted that his record was clear of defaults and the plaintiff was in default. Being in the advantageous position of having received the money, defendant was in the additional advantageous position of having only to remain passive and thrusting on the plaintiff the duty of proving his (plaintiff's) compliance with the contract and his (defendant's) default. He stood to lose nothing but had a chance to unjustly enrich himself by obtaining more than would compensate him for the harm done him. Coupling with this the fact that the whole oral agreement encompassed the duty of both parties to enter into a partnership arrangement, had there been no hitches which would probably have accentuated and prolonged the agony, there appears to be a good reason for a present dissociation of the careers of these parties which should be done on an equitable basis. Technically, the defendant, if free from default, could have forgiven plaintiff's supposed default and insisted on plaintiff going through with the contract, but to require plaintiff to pay the additional money, and then require the defendant to follow with it a deed to plaintiff of an undivided half interest in defendant's home in pursuance of the establishment of a partnership, would amount to tying these two together in an arrangement which would be definitely more difficult to unscramble. I am aware of the technical ability to play chess with the

law—move, counter move and checkmate—each precisely correct according to the old conventional principles of contracts perhaps, but I like the principles laid down in the Restatement of the Law—set out in Mr. Justice Latimer's opinion—and so I concur with his reasoning and his results.

McDONOUGH, J., concurs in the concurring opinion of WOLFE, J.

PRATT, Chief Justice (dissenting).

Plaintiffs, vendees, brought this action upon the theory of a breach by defendants, vendors, of an oral modification of the original oral contract, by which modification it was claimed by plaintiffs that they were to receive the one-half interest in the property upon payment of the $4,000 and the partnership contract was to be entered into at that time; and that defendants failed to deliver at that time, or at all; and failed to enter into the partnership contract with them. The lower court found that there was no such modification of the original contract, and that defendants had not breached the original contract; but that plaintiffs had never paid the balance of $5,000 entitling them to the property transfer and the contract. The evidence in the case will support the lower court's findings of fact, so we should take those facts to be true.

At no time did plaintiffs tender the balance of the $5,000 —a condition precedent to any duty upon the part of the defendants to comply with the original agreement at the risk of being held for damages for breach. Until such a tender, the inactivity of the defendants is not evidence of their intention to rescind the contract; and, unless they are in the position of having rescinded the contract the law recited by the prevailing opinion is inapplicable. Plaintiffs do not found their cause of action upon the theory of defendants' rescission, but the prevailing opinion seeks to place them in that position just the same. The effect is

to allow the plaintiffs to found a rescission upon their own default in order to recover back what they have paid. Apparently time was not of the essence in the oral contract between the parties; and that being so, a tender of the balance of $5,000 even after November 15, 1948, would have placed upon the shoulders of defendants the burden of taking a stand either to comply with the contract, or to repudiate it. Absent the tender the inactivity of the defendants was no indication that they would not perform; or that they intended not to perform. The vendees cannot make their own default the foundation for a conclusion of rescission on the part of the vendors. To be a little more specific: The following excerpt from plaintiff Mr. Young's direct examination is enlightening:

"Q. Have you been ready and willing to go ahead with the deal? A. Well, yes, anytime. I can get the money whenever he is ready to, but it will take me a little while to get, and I told him [Hansen] 'I can take and get the money on my other property, but I would maybe lose two hundred dollars.' *And he said that I will stand half if you will get it.* I said, 'No, the most sensible solution is to get the money from the sale of the house because I can get it without losing any money.' [The house had not been sold at the time of trial.]

"Q. And you said you would get it and he hasn't done anything about it? A. No, he hasn't.

"The Court: Just a moment, what is this, he said he would stand half the loss? A. I offered to get the money, you see, of five thousand dollars. You see, I have two homes I have sold and I could take and sell the contracts on those and raise the money, but it takes quite a little time and you would have to lose money on the property."

This conversation in which Hansen agreed to stand half the loss necessary to enable Mr. Young to raise the balance of $5,000 in order to finish the transaction, occurred after November 15, 1948, after the money was due and owing. If Hansen was willing to pay one-half the cost of Young raising the money to pay off the balance as Young says Hansen was, it certainly is inconsistent with the idea that the Hansens would not perform their part of the contract, or that at the time this conversation transpired, Hansen

had indicated that he refused to go on with the contract. Even Young concedes that the earliest time Hansen stated he would not go through with the deal was around February 10, 1949, approximately three months after payment was to have been made according to the contract as found by the court.

Hansen testified that the difficulties between the parties started after November 15, 1948. Mrs. Hansen says the trouble was from about January 1, 1949, on. Mr. and Mrs. Young both testified that the trouble started after November 15, 1948.

Thus, the friction spoken of in the majority opinion occurred after the breach by the plaintiffs of their obligations to pay the money on November 15, 1948. The fact that friction arose after the default in payment and consequent breach on the part of the plaintiffs and stemmed from that breach, is certainly no reason to hold that defendants must first perform before the defaulting plaintiffs were called upon to perform. If an explanation as to why the Hansens did not perform is deemed necessary, then Mr. Hansen's statements that he became jittery after November 15th, because it appeared that the Youngs weren't going through with the deal is certainly a sufficient justification for his not going beyond the duties imposed on him by contract. From all that appears, the Hansens still retained title to the property on November 15, 1948, and were ready, willing and able to comply with the contract on that date, and, taking Mr. Young's statement, quoted above, so remained for some time after that date.

It is true, that there is involved a considerable sum of money, which the Youngs stand to lose under the decision of the lower court. The record and the findings of the trial court show that the Youngs, not the Hansens brought about this situation whereby they might suffer the loss. The Youngs could have adequately protected themselves from loss by a proper tender but they failed to do so, and in

order to triumph in this case have tried the case on the theory that the defendants breached some subsequent modification of the original contract, and thus they the plaintiffs were entitled to recover. The trial court held to the contrary, that they, not the defendants were in default and guilty of a breach, and in so holding indicated that the defendants were under no duty to act unless and until plaintiffs had acted. The only testimony on the part of the plaintiffs to the effect that they had offered to pay the $5,000 came in the form of statements that they had a source other than the sale of their home from which they could and would get the money if the defendants would make out the papers, but that it would take time for them to get the money. Young, however, seemingly repudiates this, when, after having told Hansen that he could raise the money, but that it would net him a loss of $200, and after Hansen had offered to stand half this loss in order to get the $5,000 paid, he refused to get the money from this other source, but stated that the most sensible solution would be to pay the money out of the proceeds from the sale of his home because that way he wouldn't lose money. Apparently, plaintiff, Mr. Young, had determined that in any event he wasn't going to pay from any source except the proceeds of the house. The house was listed at $16,000 and was never sold. At the time of trial the plaintiff, Young, testified that it still hadn't been sold, and that he now has it listed at $12,500.

A series of annotations on the subject under controversy, commencing with 59 A. L. R. 189, and continuing in 102 A. L. R. 852, and 134 A. L. R. 1064, lay down the rule followed in this country, and annotate cases from some 35 jurisdictions sustaining the rule that a vendee who without breach on the part of the vendor, refuses to perform a contract for the purchase of real estate, cannot recover from the vendor the amount paid on the purchase price. Included within these annotations, are two Utah cases sustaining this rule.

In the case of *McLean* v. *Wedell*, 31 Utah 468, 88 P. 414, plaintiff through a series of transactions had paid $750 on a house and lot under a contract. There was no evidence that defendant had failed to carry out his part of the contract, but rather, showed he was able and willing to perform the obligations under the contract. This court on appeal reversed the trial court where a judgment for the plaintiff had been rendered, stating that the defendant was entitled to a peremptory instruction that as a matter of law the plaintiff could not recover.

Again, in the case of *Foxley* v. *Rich*, 35 Utah 162, 99 P. 666, 670, there was a contract to convey and a payment of $500 on the purchase price of $3,500 made on certain land, and the deed was placed in escrow to be delivered after all payments had been made. Three months after a current $500 installment payment was due and unpaid defendant conveyed to his brother, who took with knowledge of vendee's rights and who it appeared was the holder of the bare legal title only. This court said:

"Having made default in payment in November, 1904, how could he predicate a right to recover back prior payments made by him upon the alleged default of J. Y. Rich occurring in February, 1905? Certainly respondent cannot claim anything for his alleged tender made in January, 1905. Even if this tender had been made in time, it would have been of no legal effect, in view of the fact that it was conditional. In making this tender respondent demanded that Rich comply with respondent's requests in executing and delivering certain deeds to lands in which respondent had no interest, and which had no relation to the contract of purchase. * * *"

The court then asks the question,

"When and under what circumstances may the purchaser, under an executory contract for the purchase of real property, recover back money paid upon the contract in case the contract has been abandoned or rescinded?",

and quotes with approval from the case *Boston [Baston]* v. *Clifford*, 68 Ill. 67 at page 69, 18 Am. Rep. 547 as to

the conditions under which an action to recover part of the purchase price paid may be sustained, as follows:

"(1) Where the rescission is voluntary, and with the mutual consent of the parties, and without default on either side. (2) Where the vendor cannot, or will not, perform the contract on his part. (3) Where the vendor has been guilty of fraud in making the contract. [citations] (4) Where, by the terms of the contract, it is left in the purchaser's power to rescind it by any action on his part, and he does it. [citation of authorities] (5) Where neither party is ready to complete the contract at the stipulated time, but each is in default."

The court then analyzed the facts of this case in relation to each and stated:

"The whole matter hinged upon respondent's refusal or neglect to make the payments as he had agreed to do."

and in sustaining the result thus reached in the case that the respondent was not entitled to recover back the money paid in stated:

"* * * To permit him to recover back his payments under the facts and circumstances of this case would, in effect, offer a premium to purchasers of real estate to refuse to comply with their contracts. If the bargain suited them, they would insist on the completion of the purchase; but if it did not, they would refuse to complete it, and sue to recover back the money paid by them. That no part of the purchase money may be recovered back under circumstances like those which are controlling in this case is illustrated in the following cases: *Aikman* v. *Sanborn*, 5 Cal. Unrep. Cas. 961, 52 P. 729; *Joyce* v. *Shafer*, 97 Cal. 335, 32 P. 320; *Dennis* v. *Strassburger*, 89 Cal. 583, 26 P. 1070; *Reddish* v. *Smith*, 10 Wash. 178, 38 P. 1003, 45 Am. St. Rep. 781; *Garbcrino* v. *Roberts*, 109 Cal. 125, 41 P. 857; *Shively* v. *Semi-tropic L. & W. Co.*, 99 Cal. 259, 33 P. 848; *Webb.* v. *Stephenson*, 11 Wash. 342, 39 P. 952. While numerous cases might be cited in suport [sic] of the doctrine, the foregoing are quite sufficient. In these cases the facts and circumstances cover a wide field, but in all of them the rule that the purchaser must strictly comply with his agreement, or tender performance at the proper time and in a legal manner, is rigorously enforced. From what has been said it follows that the judgment in favor of respondent is contrary to law, and therefore cannot be permitted to stand."

For other recent cases from other jurisdictions announcing and sustaining this same rule, see: *Sawyer* v. *Sterling Realty Co.*, 41 Cal. App. 2d 715, 107 P. 2d 449; *Ross* v. *Southern California Junior College*, 15 Cal. App. 2d 541, 59 P. 2d 1038; *Rea* v. *Security Trust & Savings Bank*, 129 Cal. App. 663, 19 P. 2d 267; *Martinelli* v. *Hogrefe*, 123 Cal. App. 438, 11 P. 2d 412; *Fleischer* v. *Lockwood Lumber Co.*, 258 App. Div. 900, 16 N. Y. S. 2d 205; *United Farmers' City Market* v. *Donofrio*, 43 Ariz. 35, 29 P. 2d 144; *Lake* v. *Bernstein*, 215 Iowa 777, 246 N. W. 790, 102 A. L. R. 846; *Williamson* v. *Wilson*, 56 Idaho 198, 52 P. 2d 138; *Quinlan* v. *St. John*, 28 Wyo. 91, 201 P. 149, 203 P. 1088. Many others could be cited, but these are indicative of the rule which prevails.