NOBLE E. PIERCE, ADMINISTRATOR, *vs.* NICHOLAS STAUB.

First Judicial District, Hartford, October Term, 1905.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

The rule that a party who pays money in part performance of a con-
    tract which he is unable or refuses to complete, cannot recover it
    from the payee who remains ready and willing to perform his part
    of the agreement, rests upon the assumption that the contract, al-
    though broken by one of the parties, remains in force, open and
    unrescinded; and therefore this rule does not apply to a case, like
    the present, in which both parties by their acts and conduct have
    annulled or put an end to the contract.
Such action is equivalent in equity to a formal and mutual rescission,
    whereupon the moneys so paid may be recovered back, in the
    absence of a forfeiture clause, express or implied.
The acts of the parties in the present case reviewed and *held* to con-
    stitute in effect a rescission or abandonment of their agreement.

Argued October 4th, 1905—decided January 4th, 1906.

ACTION to recover money paid by the plaintiff's intestate
upon a contract for the purchase of property, which he had
failed to perform, brought to the Superior Court in Hartford
County and tried to the court, *Thayer, J.;* facts found and
judgment rendered for the plaintiff for $67,345, and appeal
by the defendant. *No error.*

*Frank L. Hungerford* and *Frank W. Marsh,* for the appel-
lant (defendant).

*Marcus H. Holcomb* and *Noble E. Pierce,* for the appellee
(plaintiff).

TORRANCE, C. J.  The plaintiff is the ancillary adminis-
trator, in this State, upon the estate of James M. Crosby,
who died domiciled in Massachusetts in June, 1900.  In May,
1897, the defendant and Crosby entered into a written con-
tract for the sale to Crosby of certain property belonging to

the defendant.  The property consisted of certain shares of the capital stock of the Falls Village Water Company, of the charter and franchises of the New Milford Power Company, each of this State, and of certain rights in real estate and in water rights, fully described in said contract.

That contract provided, in substance, as follows : In consideration of certain payments made to him by Crosby at and before the execution of the contract, and of the promises of Crosby contained in the contract, the defendant agreed to sell and convey to Crosby on or before the first of December, 1897, all the property aforesaid, "upon the faithful performance" by Crosby of his part of said contract.  The purchase price of the property was $150,000.  Of this price Crosby paid $3,000 before the contract was executed, and in the contract he agreed to pay $10,000 upon its execution, $10,000 on or before July 1st, 1897, and the balance on or before December 1st, 1897.  Mr. Crosby not having made all the payments required by said contract, the parties on the 23d of February, 1899, entered into a supplemental contract in which it was agreed, among other things, as follows : (1) that the amount due and unpaid by Crosby under the first contract was $97,217 ; (2) that said amount should bear interest at the rate of six per cent. per annum from April 1st, 1898 ; (3) that Crosby should pay said sum with interest as aforesaid in one year from February 23d, 1899, or sooner, in whole or in part, at his option ; (4) that upon such payment being made in full, within such time, the defendant would sell and convey to Crosby all the property agreed to be sold and conveyed in and by both contracts ; and (5) that the defendant should have the exclusive use and possession of all said property until it should be so conveyed.  It was also agreed that these two contracts should evidence the entire understanding of the parties as to said property, with one exception which need not here be noted. Neither of the contracts contained any forfeiture clauses of any kind, nor did they in terms give any power of rescission to either of the parties.

Crosby paid under both contracts the sum of $60,000 and

no more. On February 27th, 1900, while Crosby was confined to his bed by a serious illness, the defendant called upon him and informed him that he, the defendant, was then ready to carry out said agreement. Crosby said he was then unable to perform his part of the agreement, and asked for an extension of time. Upon Crosby's promising to pay a certain note of his made to the defendant and then in the hands of a third party, the defendant agreed to extend the time for performance of the contracts for a period of thirty days from February 23d, 1900. Crosby never paid that note or any part of it, nor did he carry out his part of the contract, nor tender performance thereof within the extended time so given him by the defendant.

On the 20th of March, 1900, the defendant sent to Crosby a written notice of which the following is a copy : —

" My Dear Sir : I beg to say that I am ready and prepared to perform on my part our agreements of May 8th, 1897, and February 23d, 1899, by conveying, transferring, and assigning to you all the property therein mentioned, in accordance with the terms of said agreements, and as you know, have been ready and willing to do so at all times since the dates thereof. Inasmuch as the extended time for carrying out said agreements on your part expired nearly a month ago (February 23d, 1900), and I cannot compatibly with my own rights and my purposes with regard to said property allow the matter to remain open indefinitely, I hereby request that without further delay you make the payments agreed by you to be made as fixed and determined in said last named contract, and you may consider this a demand therefor. Please take notice that unless said agreements are performed and said payments made on or before the 31st day of March, 1900, I shall regard and treat said property as divested of all interest which you may now have (if any) therein. If not convenient for you to come here, I will, on notice from you, meet you in New York any day this week or next week, for the purpose of mutually carrying out our engagements in said contracts made."

Nothing further was heard by the defendant from Crosby,

after giving said notice, and nothing was done by Crosby with reference to said contracts, except that he endeavored, until he became too ill to do business, to dispose of the property and to raise money upon the contracts to pay the balance due thereon. Nothing else, save the giving of said notice, was ever done by the defendant, in the lifetime of Crosby to put him in default under said contracts, or to terminate his rights of purchase thereunder. Crosby died in June, 1900. He never made demand upon the defendant for the payment of the whole or any part of the money paid under the contracts; nor did he, after March 31st, 1900, make any claim to the defendant that he, Crosby, had any rights in the property described in the contracts; but he did make such claim to his wife and brother a few days before he died. Up to the 31st day of March, 1900, the defendant was ever ready and willing to carry out his part of said contracts, but no offer or tender of performance was ever made by Crosby, or by any one in his behalf, or since his death on behalf of his estate. On the 27th of June, 1900, the widow of Crosby called upon the defendant to ascertain the amount due under the contracts, and whether she could have time in which to pay it. The defendant then informed her that as her husband's time for performance had expired, his heirs had no interest in the property; but said that if the amount due was paid within thirty days then next ensuing, he would, unless the property was sold within that time before the payment was made, convey the property to Mr. Crosby's heirs. He requested her to write him next day as to whether she could raise the money. This she did not do, nor did she or any one else thereafter ever tender performance on behalf of the Crosby estate. After this, but exactly when did not appear, the defendant sold all of said property to a third party. Such sale appears to have been made some time in 1902.

In September, 1900, the widow of Crosby was appointed and qualified as administratrix upon his estate, and in February, 1903, the plaintiff was in this State appointed and qualified as ancillary administrator of said estate. Demand

upon the defendant, for the repayment of the money paid him by Crosby under the two contracts, was made by the administratrix in January, 1903, and by the plaintiff in February, 1903. The defendant refused to pay. The defendant, until he sold said property, was in the sole and exclusive use and occupation thereof. The defendant did not in this case, by his pleadings or otherwise, make any claim for damages on account of the default of Crosby under said contracts.

Upon these facts the defendant made divers claims of law, which in substance and effect amounted to this: that the plaintiff was not entitled to recover back the money paid by Crosby, either in whole or in part; in other words, that upon Crosby's default the defendant became entitled, at his option, to keep the property and the purchase money too. The court overruled this claim, and held that as the defendant had made no claim for damages on account of the default, the plaintiff was entitled to recover the amount of the money paid by Crosby, with interest from the date of the demand made upon the defendant by the plaintiff.

In the case at bar, the sale and conveyance to be made by the defendant were undoubtedly conditioned upon the payment of the price in full. If Crosby had paid ninety-nine per cent. of the price in advance, he could not obtain the property without paying or tendering the remaining one per cent.; and if he, without legal excuse, failed to make such payment or tender in the manner prescribed by the contract, he might lose his right to such sale and conveyance; and the defendant's claim is that he would, in such case, also lose the entire purchase money paid in advance, although the contract might contain no clause of forfeiture. The view of the law embodied in this last claim seems to put the vendee who pays a substantial part of the price in advance and then defaults, in a much worse position than the vendee who pays nothing in advance and ultimately refuses to go on with the contract. In the former case the vendor may get very much more than compensation for the loss caused by his breach; while in the latter case he gets only compen-

sation for his actual loss, frequently measured by the difference between the contract price and the value of the property at the time of the breach, which may be merely a nominal amount.

Founded upon the doctrine of the entirety of contracts, the general rule undoubtedly is, that if a party without legal excuse fails to perform the conditions of a contract, he can recover no compensation for benefits conferred upon the other party by a part performance. Keener, Quasi Contracts, p. 215, and cases there cited. To this general rule two exceptions, real or apparent, are not without authority for their support: one, in the case of contracts for personal services for a given time for a given sum; and the other, in case of contracts to do a specific work, as to build or repair a house, or a machine, and the like. In the former class of cases it is held by many courts that even a party who wilfully breaks his contract may recover for the value of work done in excess of the damages caused by the breach. *Britton* v. *Turner*, 6 N. H. 481; *Pixler* v. *Nichols*, 8 Ia. 106; *Wheatly* v. *Miscal*, 5 Ind. 142; *Fuller* v. *Rice*, 52 Mich. 435; *Chamblee* v. *Baker*, 95 N. Car. 98; *Parcell* v. *McComber*, 11 Neb. 209; *Duncan* v. *Baker*, 21 Kan. 99. In the latter class of cases it is held by many courts that a party who in good faith attempts to perform his contract and undesignedly deviates from it in some respects, may recover for benefits conferred, less damages caused by the breach. See *Pinches* v. *Swedish Lutheran Church*, 55 Conn. 183, and cases cited therein.

Assuming, without deciding, that the principles applied in the above two classes of cases, if sound, are not applicable in the present case, does that case fall within the rule invoked by the defendant? We think not. That rule is based upon the proposition that a party who advances money in part performance of a contract and then stops short and refuses to go on, while the other remains ready and willing to perform, cannot recover back the money advanced. This proposition is supported by the following cases, and by many others that might be cited. *Ketchum* v. *Evertson*, 13 Johns.

(N. Y.) 359; *Lawrence* v. *Miller*, 86 N. Y. 131; *Rounds* v. *Baxter*, 4 Greenl. (Me.) 454; *Plummer* v. *Bucknam*, 55 Me. 105; *Hill* v. *Grosser*, 59 N. H. 513; *Steinbach* v. *Pettingill*, 67 N. J. L. 36; *Downey* v. *Riggs*, 102 Ia. 88; *Hansbrough* v. *Peck*, 5 Wall. (U. S.) 497.

The decisions in these cases all proceed upon the assumption that the special contract, though broken by one of the parties, remains open and unrescinded; and the defendant's claim in the present case proceeds upon such an assumption; but we think that in this case the fact thus assumed is not true. We are of opinion that the parties in this case have, in effect, rescinded and put an end to the contracts. It clearly appears that Crosby made default. In one sense it was not a wilful default, for to the last he tried to fulfil his contract; nevertheless his failure was without legal excuse and gave the defendant the right to put an end to the contract if he chose to do so. By his written notice to Crosby the defendant said, in effect, that unless by a certain day the price was paid in full, the defendant would consider all the rights of Crosby, and all the obligations of the defendant, under the contracts, as at an end, and all the rights of Crosby to the money paid, or to the land, as at an end. From the time of Crosby's default even until now, the defendant has acted with respect to the property, the money, and the contracts, according to the tenor of his notice to Crosby. He has recognized no rights of Crosby, or of his estate, to the property covered by the contracts, or to the money paid by Crosby under the contracts, or any obligations of his own under the contracts. He has denied the existence of any such rights and obligations, has treated the property as his own, and has disabled himself from performing the contracts, by transferring the property to other parties. In short, since Crosby's default the defendant has treated the contracts as at an end. The position thus assumed by the defendant must be regarded, upon the facts found, as having been acquiesced in by Crosby in his lifetime, and by his representatives since his decease; for after his default he neither paid nor tendered any money in perform-

ance of the contracts; and since his decease his representatives have done nothing save to bring this action, and that is based upon the assumption that the contracts are at an end. Under these circumstances both parties must be regarded as having treated the contracts as at an end, and such action is equivalent in equity to a formal and mutual rescission; and this being so, the defendant cannot be allowed to treat the contracts as dead to the prejudice of Crosby's estate, and yet alive to the advantage of himself.

The contracts being thus at an end, the defendant claims by right of forfeiture the $60,000 paid by Crosby, although the contracts contained no clause of forfeiture. If this claim is sustained Crosby pays, and the defendant receives, that sum of money for nothing, save the promise of the defendant from which he now claims to be freed; and, save this promise, the defendant parted with nothing, not even the possession and use of the property agreed to be conveyed; and it nowhere appears that he lost one dollar by reason of his promise or by reason of Crosby's default.

In cases like the present it has been said by high authority that the better remedy of the vendor, and in some instances his only safe remedy, is to institute proceedings in the proper court " to foreclose the equity of the purchaser where partial payments or valuable improvements have been made." *Hansbrough* v. *Peck*, 5 Wall. (U. S.) 497, 506. Upon Crosby's default, the defendant, instead of bringing him into court to have their respective rights as against each other adjusted and determined, decided for himself that the money advanced was forfeited, and that Crosby had no rights whatever as against the defendant; and he is now in court asking it, in effect, to aid him in enforcing that forfeiture. Equity abhors, and the law does not favor, a forfeiture; and if there be any difference between the defendant's position as determined by the rules of law, and his position as determined by the rules of equity, it must be judged by the latter. General Statutes, § 532.

In view of the conclusion reached, that the contracts were in effect rescinded, the right of the defendant to retain the

money advanced cannot be sustained; and as he made no claim whatever for damages suffered by the default, the plaintiff, if entitled to recover anything, was entitled to recover all. "Money paid upon a contract which is subsequently rescinded is never forfeited unless there is an express or implied contract to that effect;" *Hickock* v. *Hoyt*, 33 Conn. 553, 559; and upon such rescission it must be returned to him who has advanced it. *Gay* v. *Alter*, 102 U. S. 79; *Frink* v. *Thomas*, 20 Ore. 265; *Wheeler* v. *Mather*, 56, Ill., 241; *Drew* v. *Pedlar*, 87 Cal. 443; *Merrill* v. *Merrill*, 103 Cal. 287; *Gilbreth* v. *Grewell*, 13 Ind. 484; *Glock* v. *Howard & W. C. Co.*, 123 Cal. 1.

Whether the defendant, upon proper pleadings and proof in this case, might have recovered the damages, if any, caused to him by Crosby's default, is a question that does not arise in this case, and therefore need not be considered.

There is no error.

In this opinion the other judges concurred.