BENJAMIN H. SEGAL ET AL. v. HAZEL G. MOONEY

COURT OF COMMON PLEAS    NEW HAVEN COUNTY    FILE No. 36905

Memorandum filed May 26, 1947.

*Joseph I. Sachs,* of New Haven, for the Plaintiffs.

*Edward L. Reynolds* and *John J. Kinney, Jr.,* of New Haven, for the Defendant.

FITZGERALD, J.   In this action the plaintiffs seek to recover of the defendant a deposit of $500. The following facts are not in dispute: On September 10, 1945, the defendant was the owner of two parcels of land in Hamden.   An oral agreement was entered into on that day in which the plaintiffs agreed to buy and the defendant to sell these properties.   The price was set at $24,000.   The plaintiffs paid down $500 to be applied on the purchase price and the defendant executed in the plaintiffs' favor a written receipt acknowledging the deposit.   This receipt, dated September 10, 1945, also contains a description of the properties and a recital of the terms of the transaction.   It concludes with these words: "This deal is to be handled through White Bros., Attorneys of New Haven, to be completed within 30 days.   No agents' commissions to be paid."   About two weeks later, and within the thirty days' period, the plaintiffs became interested in other property and notified the defendant that they would not accept title to her properties under the agreement and the deal was off.   The defendant remonstrated but to no avail.   During the thirty days' period the defendant was ready and willing to perform her part of the agreement and convey a good title, but the plaintiffs refused to perform their side of the undertaking.   On April 30, 1946, some seven

months later, the defendant sold one of the two pieces of property for $12,000. The plaintiffs then demanded a return of their deposit of September 10, 1945, in the amount of $500. The defendant's refusal to return the deposit has resulted in this litigation.

The basis of the plaintiffs' alleged cause of action is that a mutual rescission of the agreement to buy and sell took place upon the defendant's subsequent sale of one of the properties to a third party. In her answer the defendant denies the occurrence of a mutual rescission and, in addition, pleads specially that "As a result of the plaintiffs' default in the performance of the contract, [she] has suffered damages in excess of the amount of the deposit."

The plaintiffs' frontal attack and main reliance are based on the case of *Pierce* v. *Staub,* 78 Conn. 459, 3 L. R. A. (N. S.) 785. In that case the plaintiff's decedent had paid down in instalments the sum of $60,000 on an agreed purchase price of $150,000 for certain real and personal properties owned by the defendant and died before he was able to complete payments and close the transaction. His estate was held entitled to a return of the full instalment payments. In the Connecticut Annotations to § 357(2) of the Restatement, 2 Contracts, it is said of the *Pierce* case: "The buyer . . . committed a total breach of contract after paying $60,000 on the purchase price ($150,000). The seller thereafter declared the contract at an end and sold the property to a third party. The buyer was given judgment for the return of the money paid on the theory of a 'rescission,' although clearly there was no mutual agreement to rescind. The court was obviously interested in avoiding an inequitable forfeiture which, as the court said, 'equity abhors and the law does not favor.' The contract in this case contained no forfeiture provision. From the language used by the court it appears that if the defendant had made a counterclaim for damages for the plaintiff's breach and proved an injury, such a counterclaim would have been sustained."

In the case at bar we are not concerned with a deposit of over one-third of the total sale price as in the *Pierce* case; nor are we concerned with a buyer who, as in the *Pierce* case, labored during the closing chapter of his life to raise money to complete the transaction and thus save his substantial investment. The plaintiffs in the case at bar occupy no particular equitable standing in the eyes of the court. For all that ap-

pears they did not want the properties in question in the last analysis because they had found another property more to their satisfaction. Their refusal to complete the transaction was not because of an inability to raise the balance of the purchase price but for reasons deemed advantageous to themselves. The deposit they paid down represents but a one forty-eighth part of the agreed sale price of $24,000, and demand for its return was only made after the defendant had succeeded in selling off one of the properties seven months after the plaintiffs decided to repudiate their side of the agreement and a fraction over six months after the thirty days' period to close the transaction had run its course. It would seem to be unjust and inequitable to invoke the fiction of a mutual rescission even on the conceded facts.

Upon the evidence presented, and apart from any concession of counsel respecting the agreed facts, the court is able to make three subordinate findings not previously recited and deemed vital to a just determination of this case: (1) one of the plaintiffs, acting for himself and the other plaintiff, said to the defendant when the latter was remonstrating because the transaction was not to be completed, "What are you kicking about, you don't have to return the deposit?"; (2) in the subsequent sale of one of the properties to a third party for $12,000, the defendant was obliged to pay a broker's commission of $600; (3) the piece of property sold is more valuable than the remaining piece of property and it is reasonably probable that the latter will not bring as much in a sale.

It has been noted that in a special defense the defendant pleads that as a result of the plaintiffs' default she has suffered damages in excess of the deposit made by the plaintiffs. The intimation in the *Pierce* case is that a counterclaim by the defendant for damages if established would have been sustained In the case at bar the defendant has not seen fit to ask for an affirmative award under the heading of a counterclaim but has specially pleaded damages in excess of the deposit. The court finds as a fact that the defendant has proven damages at least equal in amount if not greater than the plaintiffs' deposit of $500 when the more valuable of the two properties was sold for one-half of the agreed sale price of the two properties, less a commission of $600. To deny the defendant the benefit of this finding and its effect in the decision of the case because she did not set up a counterclaim in lieu of the special defense

would be to exalt a technicality at the sacrifice of substance. Present day courts are prone to avoid an absurd result if reason and justice dictate otherwise. The situation disclosed by the evidence is. that the defendant does not stand to make a profit by the plaintiffs' refusal to carry out the agreement and that the defendant would be penalized. without fault on her part if she were required to return the deposit.

In 40 Yale Law Journal 1013, there appears an article by Professor Corbin entitled *"The Right of a Defaulting Vendee to the Restitution of Installments Paid"*. The treatment of the subject is most comprehensive and has satisfied the court that the plaintiffs in the case at bar should not be permitted a recovery. Particular reference is made to the cases collected in footnote 19, commencing on page 1023. Of the cases there cited the discussion in *King* v. *Milliken,* 248 Mass. 460, *Sanders* v. *Brock,* 230 Pa. 609, and *Ketchum* v. *Evertson,* 13 Johns. (N. Y.) 359, is deemed pertinent and applicable to the facts of the case at bar. A single quotation is illustrative: "The plaintiffs renounced the contract, and peremptorily refused to fulfill it; it was in vain, therefore, to keep the land for them. The plaintiffs cannot, by their own wrongful act, impose upon the defendant the necessity of retaining property which his exigencies may require him to sell." *Ketchum* v. *Everston, supra,* 365 *King* v. *Milliken, supra,* 464.

The cases on the general subject are voluminous and the results obtained are not always in harmony. See the following annotations: 134 A. L. R. 1064, 102 A. L. R. 852, 59 A. L. R. 189, 35 L. R. A. (N. S.) 534, L. R. A. 1918 B 538; and notes in 33 Yale L. J. 435 and 36 Yale L. J. 580. In passing it may be said that the Statute of Frauds does not enter the problem so as to bolster the plaintiffs' position. ·

To go no further, it is concluded that the Connecticut case of *Pierce* v. *Staub, supra,* invoked by the plaintiffs, avails them nothing and by strong implication sanctions a defendant's judgment. The issues are found for the defendant and judgment may so enter with an award of costs as an incident.