## GREAT UNITED REALTY COMPANY, INC. *v.* LEWIS

[No. 30, October Term, 1953.]

444

*Decided January 7, 1954.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Joseph Loeffler,* with whom were *Harry E. Goertz* and *Benjamin Unger* on the brief, for the appellant.

*Benjamin J. Blackburn, Jr.,* with whom was *William W. Mahoney* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This appeal raises the question whether the vendee of a house who made two payments on the purchase price to the vendor, but who subsequently renounced the contract of sale and abandoned possession of the property, is entitled to recover those payments.

By the contract executed on December 2, 1950, Great United Realty Company, Inc., agreed to sell to Lillian F. Lewis the property situated at 1616 North Fulton Avenue in Baltimore, subject to an annual ground rent of $90 to be created, for the sum of $6,950. The vendee paid $25 prior to the execution of the contract, and agreed to pay $675 additional on or before December 7, when she would be given possession, and further agreed that she would pay the balance of the purchase price, in accordance with a formal contract to be executed by the parties, in weekly instalments of $20 with interest at 6 per cent. The contract also provided that time was of the essence of the contract.

On December 4 the vendee made the payment of $675 and was given possession of the property. She and her husband moved into the house, but within a few days she suffered a nervous breakdown, and on December 8 she became a patient in Crownsville State Hospital. She did not sign any further contract and did not make any further payment. Her husband abandoned the property on December 24, and about a week later the furniture was moved out of the house.

On January 10, 1951, the vendor, learning that the vendee and her husband had abandoned the property, mailed a registered letter to her at 1616 North Fulton Avenue. The letter was returned undelivered with the notation that she had moved without leaving any forwarding address. On June 21, 1951, the vendor resold the property, subject to ground rent, for $6,150.

In April, 1952, the vendee entered suit to recover the payments made to the vendor. She admitted that she had defaulted, but she asserted that her default was not willful. The vendor, contesting the claim, made the defense that it did not consent to a rescission of the contract, that it did not resell the property until after the purchaser had been in default for more than six months, and that, even with the retention of the $700 paid by the vendee in December, 1950, it sustained a loss of $100 plus interest on $6,250.

The trial judge, taking the view that plaintiff did not default willfully and that defendant had consented to a rescission of the contract, entered judgment in favor of plaintiff for the sum of $700. The appeal is from that judgment.

It has generally been held that where the vendee of real property makes part payment on the purchase price but subsequently fails to fulfill the contract without justifiable excuse, he cannot recover the payment if the vendor is ready and willing to fulfill his part of the contract, even though the vendor may have made a profit by reason of the default. *Ketchum v. Evertson,* 13 Johns., N. Y., 359, 7 Am. Dec. 384; *Steinhardt v. Baker,* 163 N. Y. 410, 57 N. E. 629; *Hill v. Grosser,* 59 N. H. 513; *Hawley v. Moody,* 24 Vt. 603; *Coughlin v. Knowles,* 7 Metcalf, Mass., 57, 39 Am. Dec. 759; *King v. Millikin,* 248 Mass. 460, 143 N. E. 511; *Steinbach v. Pettingill,* 67 N. J. L. 36, 50 A. 443; *Stewart v. Elkins,* 101 W. Va. 557, 133 S. E. 125; *McKinney v. Harvie,* 38 Minn. 18, 8 Am. St. Rep. 640; *Day v. Wilson,* 83 Ind. 463, 43 Am. Rep. 76; *McManus v. Blackmarr,* 47 Minn. 331, 50 N. W. 230; *Lake v. Bernstein,* 215 Iowa 777, 246 N. W. 790,

102 A. L. R. 846; *Wensler v. Tilke,* 97 Kan. 567, 155 P. 946; *Williamson v. Wilson,* 56 Idaho 198, 52 P. 2d 138; *McLean v. Wedell,* 31 Utah 468, 88 P. 414; *Santikian v. Weakley,* 56 Cal. App. 272, 204 P. 1092; *El Paso Cattle Co. v. Stafford,* 176 F. 41; *Hansbrough v. Peck,* 5 Wall. 497, 18 L. Ed. 520.

In 1880 the Maryland Court of Appeals, in *Davis v. Hall,* 52 Md. 673, recognized in a dictum the rule of the common law that where the vendee rescinds the contract of sale, and the vendor is not in default, the vendee is not entitled to recover any part payment he made on the purchase price.

In *Spellman v. Dundalk Co.,* 1933, 164 Md. 465, 165 A. 192, the contract contained a forefeiture clause providing that in the event the vendee should fail to pay any instalment, the vendor could declare the contract void, and all amounts paid by the vendee should then become the property of the vendor as liquidated damages. Although the vendee had paid a substantial amount, the Court denied recovery.

In the case before us it was suggested that the sum of $25 paid before the execution of the contract was earnest, whereas the sum of $675 was part payment, and that some distinction might be made between them, since there is no forfeiture clause in the contract. It was the practice in the early law of England, derived from the Roman law, to require a purchaser to deliver an earnest, sometimes a ring or other article, sometimes a sum of money, to bind his contract by inducing him to fulfill his obligation through fear of a forfeiture. The earnest did not lose its character as such when it served also as part payment of the purchase price. It was pointed out in an English case in 1884, *Howe v. Smith,* L. R., 27 Ch. D. 89, 102, that earnest and part payment are two distinct things, as shown by the 17th Section of the Statute of Frauds, which mentions "earnest to bind the Bargain" and "Part of Payment" as separate things, either of which is sufficient to give validity to a parol contract for the sale of goods. *2 Alexander's*

*British Statutes,* Coe's Ed., 689, 693. The Uniform Sales Act, adopted in Maryland in 1910, likewise makes a distinction between "earnest to bind the contract" and "part payment." Laws 1910, ch. 346, Code 1951, art. 83, sec. 22. The English decisions still recognize a distinction between earnest and part payment. In *Farr, Smith & Co., Ltd. v. Messers, Ltd.,* 1928, 1 K. B. 397, it was held that a sum of money paid by the vendee to the vendor was part payment but not earnest, because it was not given at the time of the execution of the contract, but at a later time in accordance with the provisions of the contract, and therefore not given to bind the bargain. Under the strict rule of the common law, the distinction between earnest and part payment is immaterial here, because, as we have stated, under that rule a vendee who repudiates a contract to purchase land must be content to lose whatever he had paid under it.

In recent years there has been a growing recognition of the injustice that often results from the application of the rule permitting total forfeiture of part payments under a contract of sale. One of the decisions which appeared harsh was *Doctorman v. Schroeder,* 92 N. J. Eq. 676, 114 A. 810. There it was held that a court of equity could not give any relief to a vendee who had paid half of the purchase price but failed to pay the other half at the required time, where time was of the essence of the contract, although the vendee was only 40 minutes late in tendering the balance due. Among the legal scholars who have urged a relaxation of the strict rule of the common law was Professor Williston, who suggested that where a purchaser is given immediate possession, the case should be dealt with, not as an ordinary executory contract of sale, but in the same way as a mortgage situation. 3 *Williston on Contracts,* Rev. Ed., sec. 791.

The American Law Institute recognized the modern trend of the law. It stated that where the defendant fails or refuses to perform his contract and is justified

therein by the plaintiff's own breach of duty or non-performance of a condition, but the plaintiff has rendered a part performance under the contract that is a net benefit to the defendant, the plaintiff can get judgment for the amount of such benefit in excess of the harm that he has caused to the defendant by his own breach, in no case exceeding a ratable proportion of the agreed compensation, if (a) the plaintiff's breach or non-performance is not willfull and deliberate, or (b) the defendant, with knowledge that the plaintiff's breach of duty or non-performance of condition has occurred or will thereafter occur, assents to the rendition of the part performance, or accepts the benefit of it, or retains property received although its return in *Specie* is still not unreasonably difficult or injurious. This statement is subject to the exception that the plaintiff has no right to compensation for his part performance if it is merely a payment of earnest money, or if the contract provides that it may be retained and it is not so greatly in excess of the defendant's harm that the provision is rejected as imposing a penalty. *2 Restatement, Contracts,* sec. 357.

In 1941 the Supreme Court of Rhode Island expressed approval of relaxation of the common-law rule in its decision in *Seekins v. King,* 66 R. I. 105, 17 A. 2d 869, 871, 134 A. L. R. 1060, 1063. Justice Capotosto, speaking for the Court, stated that, while as a general rule a vendee who repudiates his contract without legal excuse is not entitled to recover any part payment he has made on the contract, even though the contract does not contain a forfeiture clause, nevertheless the Court should allow recovery "in certain instances where a person has received from another a benefit the retention of which would be unjust under some legal principle or situation which equity has established or recognized."

In the instant case there is no necessity to consider a relaxation of the common-law rule, because the vendor did not profit from the vendee's default, and there is no basis for application of the doctrine of unjust enrich-

ment or any other equitable principle. The vendee paid only about 10 per cent of the purchase price, and defaulted completely on her promise to pay the remaining 90 per cent in weekly instalments, and permanently abandoned the property. As a result of her default, the vendor sustained a loss upon its resale of the property.

The vendee's complaint seems to be that, on account of sickness, she was unable to pay any of the instalments. However, the law is settled that a contract between competent parties cannot be rescinded by either party without an option to do so or without the other party's consent, in the absence of fraud, duress, or undue influence, or unless the equities are such that the other party should not be permitted to enforce the contract. A party to a contract has no right to rescind it merely because he finds in the light of changed conditions that he made a bad deal. A court should not undertake to redraft a contract merely because one of the parties has been unfortunate or has become dissatisfied with its provisions. *Vincent v. Palmer*, 179 Md. 365, 19 A. 2d 183; *McKeever v. Washington Heights Realty Corporation*, 183 Md. 216, 37 A. 2d 303, 308; *Dooley v. Stillson*, 46 R. I. 332, 128 A. 217, 52 A. L. R. 1505.

We now pass to the final question whether the contract in this case was mutually rescinded. It is, of course, beyond question that a contract may be mutually rescinded either by express agreement or by any act or course of conduct of the parties which clearly indicates their mutual understanding that the contract is abrogated. It is also accepted that where there is a mutual rescission of a contract, the parties are entitled to be placed *in statu quo* as far as possible. Accordingly, where the vendor consents to a rescission, the purchaser may recover all of the payments he has made to the vendor under the contract. *Harris v. Kirshner*, 194 Md. 139, 147, 70 A. 2d 47; *Nicolopoolos v. Hill*, 217 Ala. 589, 117 So. 185, 59 A. L. R. 185.

In this case the vendee abandoned the property in December, 1950, and was in a hospital continuously from that time until August, 1951, with the exception of ten days in March, 1951. When she was in Baltimore in March, 1951, she phoned to the realty company to make an appointment for the purpose of requesting a refund, but before the time of the appointment she became ill again and was taken back to the hospital. After she was finally discharged in August, 1951, she called at the office of the company and conferred with one of the officials. When she was asked at the trial what the official told her, she answered: "He said he couldn't do anything about it. I went down several times." It is clear that there was no mutual rescission by express agreement.

The vendee contends, however, that the vendor sold the property to someone else and consented to rescission of the contract by acquiescence. The general rule is that where the vendee fails to perform his part of the contract of sale, the fact that the vendor subsequently takes back the property and resells it does not necessarily imply that he consented to a rescission so as to render him liable to the vendee for the amount paid on the purchase price. *Ketchum v. Evertson*, 13 Johns., N. Y. 359, 7 Am. Dec. 384, 387; *Kenniston v. Blakie*, 121 Mass. 552; *King v. Milliken*, 248 Mass. 460, 143 N. E. 511; *Lawrence v. Miller*, 86 N. Y. 131; *Sanders v. Brock*, 230 Pa. 609, 79 A. 772, 35 L. R. A., N. S., 532; *McClanahan v. Sehon*, 113 Kan. 482, 215 P. 277; *Lake v. Bernstein*, 215 Iowa 777, 246 N. W. 790, 102 A. L. R. 846.

In *Ketchum v. Evertson*, supra, Judge Spencer, speaking for the Supreme Court of New York, forcefully stated:

"It would be an alarming doctrine to hold, that the plaintiffs might violate the contract; and, because they chose to do so, make their own infraction of the agreement the basis of an action for money had and received. Every

man who makes a bad bargain, and has advanced money upon it, would have the same right to recover it back that the plaintiffs have. The defendant's subsequent sale of the land does not alter the case; the plaintiffs had not only abandoned the possession, but expressly refused to proceed, and renounced the contract. To say that the subsequent sale of the land gives a right to the plaintiffs to recover back the money paid on the contract, would, in effect, be saying that the defendant could never sell it without subjecting himself to an action by the plaintiffs. Why should he not sell? The plaintiffs renounced the contract, and peremptorily refused to fulfill it; it was in vain, therefore, to keep the land for them. The plaintiffs cannot, by their own wrongful act, impose upon the defendant the necessity of retaining property which his exigencies may require him to sell. This would be most unreasonable and unjust, and is not sanctioned by any principle of law."

It is true that there are some instances where it has been held under the peculiar facts that where the vendor had resold the property to someone else, he consented to rescission of the contract. *Guill v. Pugh,* 311 Ky. 90, 223 S. W. 2d 574, is an illustration. In that case the vendee repudiated the contract on the ground that the title to the land was defective, and the basis of the Court's decision was that the vendors had sold the property to someone else while the suit was pending, and consequently they had in effect rescinded the contract, because they had made it impossible for themselves to comply with it.

On this appeal the vendee relied on *Pierce v. Staub,* 78 Conn. 459, 62 A. 760. In that case the vendee, after making a part payment of $60,000 on the purchase of certain capital stock and rights in real estate, failed to fulfill his agreement. After his death the administrator of his estate brought suit to recover the part payment,

and the Court held that the vendor had consented to a rescission of the contract. That decision was based upon the fact that the vendor had notified the vendee that all rights and obligations under the contract were at an end.

Here the vendor did not resell the property until six months after the vendee had defaulted and abandoned possession of the property. There is no evidence to warrant the finding that the vendor had acquiesced in the vendee's default.

As the vendee is not entitled to recover either of the payments which she made to the vendor, the judgment entered in the Court below in her favor must be reversed.

> *Judgment reversed and judgment entered in favor of defendant, with costs.*