**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-2020**

FIRST PENN-PACIFIC LIFE INSURANCE COMPANY,

Plaintiff - Appellant,

v.

WILLIAM R. EVANS, Chartered; INVOTEX INCORPORATED, f/k/a
Maryland First Financial Services Corporation,

Defendants - Appellees.

---------------------------------------

LIFE INSURANCE SETTLEMENT ASSOCIATION,

Amicus Supporting Appellees.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.    Andre  M.  Davis,  District Judge.
(1:05-cv-00444-AMD)

Argued:  January 29, 2009          Decided:  February 26, 2009

Before WILLIAMS, Chief Judge,  and NIEMEYER and MOTZ, Circuit
Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Bryan David Bolton, FUNK & BOLTON, P.A., Baltimore,
Maryland, for Appellant.  Nathaniel S. Shapo, KATTEN, MUCHIN &
ROSENMAN, L.L.P., Chicago, Illinois, for Amicus Supporting
Appellees.  Paul S. Caiola, GALLAGHER, EVELIUS & JONES, L.L.P.,

Baltimore, Maryland, for Appellees. **ON BRIEF:** Michael P. Cunningham, FUNK & BOLTON, P.A., Baltimore, Maryland, for Appellant. David G. Sommer, GALLAGHER, EVELIUS & JONES, L.L.P., Baltimore, Maryland, for Appellees. Jenny R. Leifer, KATTEN, MUCHIN & ROSENMAN, L.L.P., Chicago, Illinois; Eric A. Kuwana, KATTEN, MUCHIN & ROSENMAN, L.L.P., Washington, D.C., for Amicus Supporting Appellees.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

First Penn-Pacific Life Insurance Company (First Penn) appeals from the district court's grant of summary judgment to William R. Evans, legal title owner of a First Penn life insurance policy, and Invotex, Inc., receiver for the bankrupt owner of that policy. First Penn originally issued the policy to Stanley Moore. Despite Moore's intent to transfer the policy, we agree with the district court that Moore had an insurable interest when he obtained it, preventing the policy from being void ab initio. Moreover, even if Evans endorsed a premium refund check that First Penn offered for rescission, such an endorsement did not manifest a meeting of the minds sufficient to establish a mutual rescission of the policy. Therefore, we affirm the district court.

I.

The majority of facts in this case are not in dispute. In September 1997, Moore, an Arizona resident, commenced a fraudulent scheme to exploit the "viatical settlement" industry. A viatical settlement is a contract by which a terminally ill person assigns the benefit of his life insurance policy to a third party in exchange for cash to pay for medical or personal expenses. See, e.g., Life Partners, Inc. v. Morrison, 484 F.3d 284, 287-88 (4th Cir. 2007) (reviewing history of viatical

3

settlements).  Between November 13, 1997 and December 15, 1997, Moore applied for (and eventually obtained) seven life insurance policies, totaling $8.5 million in coverage.  Shortly thereafter, Moore met with a viatical settlement broker to discuss selling the policies he had obtained; at that time, he falsely represented that he was terminally ill.  By April 1998, Moore had sold at least six of his policies.

On January 5, 1998, First Penn issued to Moore a 10-year policy, which a month later Moore converted to a 20-year policy; this 20-year two million dollar policy is the one at issue in this case.  By not disclosing his existing and pending policies with other insurance companies when obtaining this policy, Moore made material misrepresentations to First Penn.

In October 1999, about a year and a half after issuance of the Moore policy, First Penn learned of Moore's fraud.  First Penn sought to rescind the policy, sending a letter to Evans[1] giving notice of rescission along with a refund check for the premiums paid.  Evans promptly responded to the letter, rejecting the attempted rescission and returning the check to

---

[1] In March or April 1998, Moore sold his First Penn policy to Kelco Inc., which then sold the policy to Answer Care, Inc., for which defendant Evans formerly served as escrow attorney. Evans thus holds legal title in the policy at issue here for the benefit of Answer Care.  The State of Maryland placed Answer Care in receivership on October 16, 2000, and appointed intervenor and appellee Invotex, Inc. as receiver.

First Penn. First Penn then sent a second letter to Evans seeking rescission. Evans again rejected the rescission and demanded reinstatement of the policy but did not return the check, stating it would be "ludicrous to keep sending this check back and forth." However, Evans did state his intent not to cash the refund check. Evans may have endorsed that check over to the beneficial owner, Answer Care; the parties dispute whether the endorsement to Answer Care was a forgery. In any event, it is undisputed that Answer Care never cashed the refund check and instead continued to contest First Penn's attempted rescission.

On March 6, 2001, First Penn filed a complaint against Evans, seeking a declaration that the policy was rescinded and void. The district court dismissed the case on abstention grounds in light of the concurrent state receivership proceedings, and this court affirmed the dismissal. See First Penn-Pac. Life Ins. Co. v. Evans, 304 F.3d 345 (4th Cir. 2002). On February 15, 2005, after the conclusion of the state proceedings, First Penn again sought rescission, filing a new complaint; the district court granted summary judgment to Evans and Invotex. First Penn then timely noted this appeal. On appeal First Penn asserts two arguments: (1) an insurable interest did not exist under Arizona law, which the parties agree governs here, when First Penn issued the policy to Moore,

5

rendering the policy void ab initio[2] and (2) the parties mutually consented to a rescission of the policy.

## II.

We review a grant of summary judgment de novo, applying the same standards as the district court. Holland v. Washington Homes, Inc., 487 F.3d 208, 213 (4th Cir. 2007). A court may grant summary judgment only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

We have reviewed the record, briefs, and applicable law, and considered the oral arguments of the parties, and we are persuaded that the district court reached the correct result in granting summary judgment to Evans and Invotex. See First Penn-Pac. Life Ins. Co. v. Evans, No. 05-444-AMD, 2007 WL 1810707 (D. Md. June 21, 2007).

---

[2] The parties also dispute whether the incontestability clause in the policy and Arizona's incontestability statute, which states that insurance policies become incontestable two years after issuance, bar First Penn's insurable interest claim. See Ariz. Rev. Stat. Ann. § 20-1204 (2002). Because we conclude that the insurable interest claim lacks merit, we need not reach this issue.

III.

A.

With respect to First Penn's first claim on appeal, we agree with the district court that Moore had an insurable interest under Arizona law despite his plan "to sell all or most of his life insurance policies at the time he applied for them." First Penn, 2007 WL 1810707, at *4 n.7. An "insurable interest" in the context of a life insurance policy is an interest in having the insured life persist, as opposed to an interest only in the loss of that life. See Grigsby v. Russell, 222 U.S. 149, 155 (1911).

Clearly, an individual has an insurable interest in his own life, and consequently, under Arizona law, "[a]ny individual of competent legal capacity may procure or effect an insurance contract upon his own life or body...." Ariz. Rev. Stat. Ann. § 20-1104 (2002). In contrast, an individual without "any reasonable expectation of pecuniary benefit or advantage from the continued life" of an unrelated person may not insure that life; this constitutes a pure "wager policy" and is void as a contract against public policy. Conn. Mut. Life Ins. Co. v. Schaefer, 94 U.S. 457, 460 (1876); Gristy v. Hudgens, 203 P. 569, 572 (Ariz. 1922); Ariz. Rev. Stat. Ann. § 20-1104 (2002). Once a life insurance policy validly issues, however, the insured may freely transfer the policy to a third party who has

7

no insurable interest in the insured life.  Grigsby, 222 U.S. at 155–56.

The district court correctly held that in this case -- in which Moore intended to sell the policy when he applied for it but where "[t]here is no evidence that anyone other than Moore was a participant in the scheme at the time Moore obtained the First Penn policy" -- Moore had an insurable interest when he obtained the policy.  First Penn, 2007 WL 1810707, at *4 n.7. No third party participated in the procurement of Moore's policy and therefore no one was "wagering" on Moore's life in violation of public policy.  Furthermore, as amicus curiae noted in its brief and at oral argument, evaluating insurable interest on the basis of the subjective intent of the insured at the time the policy issues, as First Penn would have us do, would be unworkable and would inject uncertainty into the secondary market for insurance.[3]

---

[3] We note that the majority of courts that have directly considered the issue under various state laws have similarly concluded that intent to transfer a policy does not alone destroy an insurable interest; a third party must be involved in the procurement of the policy to eliminate the insurable interest.  See e.g., Sun Life Assurance Co. of Can. v. Paulson, No. 07-3877(DSD/JJG), 2008 WL 451054, *2 (D. Minn. Feb. 15, 2008); Life Prod. Clearing, LLC v. Angel, 530 F. Supp. 2d 646, 653-55 (S.D.N.Y. 2008); Fyffe v. Mason, 268 S.W.2d 29, 31-32 (Ky. 1954); Harrison's Adm'r v. Nw. Mut. Life Ins. Co., 63 A. 321, 321 (Vt. 1906).

With respect to First Penn's remaining contention -- that the parties mutually consented to rescission -- Evans initially argues that First Penn did not timely assert this issue in the district court. Even assuming that First Penn did properly raise the issue, the claim fails on the merits. Mutual rescission of an insurance contract can arise from "any act or course of conduct of the parties which clearly indicates their mutual understanding that the contract is abrogated." Great United Realty Co. v. Lewis, 101 A.2d 881, 884 (Md. 1954). Often when an insured cashes a premium refund check offered as a rescission, this action manifests agreement and effectuates the rescission. See Mut. of Omaha Ins. Co. v. Korengold, 241 N.W.2d 651, 652 (Minn. 1976).

In this case, however, it is undisputed that neither Answer Care nor Evans ever cashed First Penn's proffered refund check. As the district court explained, "the record shows that there has been no acceptance of the refund of premiums and that defendants have consistently rejected the attempted rescission." First Penn, 2007 WL 1810707, at *3. First Penn argues that Evans's alleged endorsement of the check was a "negotiation" under Maryland law, see Md. Code Ann., Com. Law § 3-201(b) (2002), and therefore constituted a rescission. However, all of the cases relied on by First Penn involve situations in which

9

the refund check was <u>cashed</u>.  First Penn cites no authority for the proposition that an <u>endorsement</u> from a title owner to the beneficial owner constitutes agreement to a rescission.  Because Answer Care consistently manifested its intent <u>not</u> to agree to a rescission, Evans's retention and any endorsement of the check did not manifest "a mutual understanding."  <u>Cf.</u> <u>Warren v. N.Y. Life Ins. Co.</u>, 58 P.2d 1175, 1181 (N.M. 1936) (holding that retention of check for extended period <u>without</u> notice or challenge to the rescission constituted consent to the rescission).

IV.

For the foregoing reasons, the judgment of the district court is

<u>AFFIRMED</u>.